**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALFRED J. MARTIN,
        *Petitioner-Appellant,*

v.                                                    No. 01-2436

COMMISSIONER OF INTERNAL REVENUE,
        *Respondent-Appellee.*

Appeal from the United States Tax Court.
(Tax Ct. No. 86-32146)

Argued: May 8, 2002

Decided: June 28, 2002

Before WIDENER, WILLIAMS, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Patricia Tucker, LAFLIN, LIEUWEN, TUCKER, PICK & HEER, P.A., Albuquerque, New Mexico, for Appellant. Patricia McDonald Bowman, Tax Division, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Eileen J. O'Connor, Assistant Attorney General, Gilbert S. Rothen-berg, Tax Division, UNITED STATES DEPARTMENT OF JUS-TICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Alfred J. Martin appeals from the tax court's determination that a $50,000 tax payment that he made in 1996 was credited properly by the Internal Revenue Service (IRS) to his tax liability for 1980 rather than for 1981 and 1982. Finding no error, we affirm.

I.

Martin was married to Amilu Rothhammer during 1980; they were divorced in 1981. Martin and Rothhammer are both physicians. Prior to 1980, they bought a limited partnership interest in Winchester Oil & Gas, one of the "Manhattan group" of approximately 20 partnerships. (A. at 16.)[1] The Manhattan partnerships were involved in a group of tax court cases, the "Elektra-Hemisphere" cases. *See Krause v. Commissioner*, 99 T.C. 132 (1992), *aff'd sub nom. Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir. 1994) (the "test case"). The general partners of the Manhattan partnerships hired a law firm, Mathias & Berg, to litigate the test case regarding the permissibility of certain loss deductions claimed by the limited partners and also to file petitions challenging tax determinations at the request of any of the limited partners.

The IRS determined a joint deficiency against Martin and Rothhammer for the tax year 1980 in the amount of $56,771, as well as a penalty in the amount of $16,085 for a valuation overstatement. For 1981 and 1982, Martin filed as a single taxpayer; the IRS determined a deficiency against Martin alone for 1981 and 1982 in the amounts of $14,827 and $298, respectively. For 1981 and 1982, the IRS also

---

[1] References to the appendix provided by Martin will be denoted by the abbreviation "A." References to the IRS's supplemental appendix will be denoted by "S.A."

determined that Martin was liable for negligence and failure-to-file penalties totaling approximately $1,100. On August 4, 1986, Mathias & Berg filed a tax court petition on behalf of Martin and Rothhammer, disputing the IRS's determinations for 1981 and 1982.[2] On September 6, 1988, Mathias & Berg filed a petition on behalf of both Martin and Rothhammer challenging the IRS's 1980 deficiency determination. Resolution of each of these petitions was delayed by the need to await the ruling in the test case. *Hildebrand*, 28 F.3d at 1026.

On August 9, 1996, Martin sent Mathias & Berg a check in the amount of $50,000, payable to the IRS (the $50,000 payment), with a cover letter referencing the docket number for the 1980 tax court case and indicating that the payment was towards a "good faith settlement" of Martin's "half of the obligation." (A. at 33.) Martin also enclosed a check in the amount of $500, payable to Mathias & Berg, for their review of the IRS's interest calculations, and stated in his cover letter that Rothhammer should reimburse half of this review fee. On August 14, 1996, Mathias & Berg wrote Martin and Rothhammer, stating that Martin's $50,000 check had been sent to the IRS for credit against the joint liability of Martin and Rothhammer for the 1980 tax year. On the same date, Mathias & Berg sent the check to the IRS with express instructions to credit it against potential liability for 1980. On November 18, 1996, Martin wrote Mathias & Berg, stating that he would not send any funds beyond the $50,000 he had paid "until such time as my former wife has matched that amount." (S.A. at 46.)

On Martin's motion, the tax court dismissed the 1980 petition as to him for lack of jurisdiction after it determined that he had never authorized or ratified the filing of a petition on his behalf for the 1980 tax year.[3] On June 20, 2001, the tax court entered its final decision with respect to Martin's returns for 1981 and 1982, finding Martin liable for a deficiency of $974 for 1981 and $135 for 1982, and rejecting his argument that the $50,000 payment should be applied to his defi-

---

[2] The petition erroneously included Rothhammer, who was not a party to Martin's 1981 and 1982 returns; Rothhammer filed a motion to dismiss and was removed as a party to the 1981 and 1982 litigation.

[3] In 1998, Rothhammer settled all issues related to her 1980 liability with the IRS.

ciencies for 1981 rather than to his and Rothhammer's joint deficiency for 1980. Martin timely appealed to the United States Court of Appeals for the Tenth Circuit. The Tenth Circuit granted an unopposed motion to transfer the case to this circuit on November 26, 2001.[4] On appeal, Martin does not challenge the tax court's deficiency determinations for 1981 and 1982; instead, he contends only that the tax court should have applied the $50,000 payment to his 1981 liability, resulting in a determination that he had made a substantial overpayment for that year.

## II.

The IRS contends for the first time on appeal that because the petition for the 1980 tax year was dismissed as to Martin based upon his insistence that he never authorized or ratified its filing, the tax court lacked jurisdiction to "redetermine" Martin's liability for the 1980 tax year. It is our duty at the outset to examine de novo the question of whether the tax court had jurisdiction to order the $50,000 payment applied to Martin's 1981 liability. *Correia v. Commissioner*, 58 F.3d 468, 469 (9th Cir. 1995).

The tax court is a court of limited jurisdiction, and it may exercise jurisdiction only as expressly provided by statute. *Commissioner v. McCoy*, 484 U.S. 3, 7 (1987). When the IRS has issued a notice of deficiency for a given year and the taxpayer files a timely petition for that year, the tax court obtains jurisdiction to determine whether there is a deficiency for that year. *Estate of Baumgardner v. Commissioner*, 85 T.C. 445, 448 (1985). Once the tax court has jurisdiction to determine whether there is a deficiency for a given year, Congress has authorized the tax court to determine whether a taxpayer has made an overpayment of tax for that year. 26 U.S.C.A. § 6512(b) (West 1989); *Winn-Dixie Stores v. Commissioner*, 110 T.C. 291, 294-95 (1998). An overpayment is the excess of a taxpayer's payments for the period at issue over his liability for that period. *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947) ("overpayment" is "any payment in excess of

---

[4]Because Martin lived in Virginia at the time his tax court petition was filed, venue for appeal lies in this court. 26 U.S.C.A. § 7482 (West 1989) (stating that appellate venue is based on a taxpayer's residence at the time a petition was filed).

that which is properly due"). A determination of an overpayment for the period at issue thus logically requires a determination of two facts: the taxpayer's liability for that period and the amount of the taxpayer's payments applicable to that period. Accordingly, the tax court's overpayment jurisdiction includes the power to determine whether a payment is applicable to the particular period for which the tax court has jurisdiction to make a deficiency determination. *Malachinski v. Commissioner*, 268 F.3d 497, 508 (7th Cir. 2001) (stating that the tax court has jurisdiction to determine "whether a deposit payment is applicable to a particular deficiency");[5] *Estate of Wilson v. Commissioner*, 78 T.C.M. (CCH) 35 (1999) (excercising the tax court's overpayment jurisdiction to review improper IRS application of a portion of a payment specifically designated for the year under review to other years); *Hays v. Commissioner*, 71 T.C.M. (CCH) 1754, 1757-58 (1996).[6] Thus, the overpayment jurisdiction facially provided the tax court with the authority to determine whether Martin's $50,000 payment was properly attributable to 1981.

On appeal, the IRS points to several statutory provisions that, it argues, strip the tax court of jurisdiction to determine whether a payment is applicable to a period at issue before the tax court, when the IRS has credited the payment to another period that is not at issue before the tax court. First, the IRS notes that the tax court has no jurisdiction to determine whether the tax for any period not at issue before it has been overpaid or underpaid. 26 U.S.C.A. § 6214(b) (West 1989); *Gooding v. Commissioner*, 310 F.2d 501, 502 (4th Cir. 1962). Determinations of overpayment or underpayment for years not before the tax court are impermissible because they necessarily

---

[5]*Malachinski* ultimately concluded that the tax court could not order a payment credited to a year at issue before the tax court where the IRS had credited the payment to a year not at issue before the tax court, but as the IRS notes, in *Malachinski* the payment at issue was made before the initiation of tax court proceedings, while here, the $50,000 payment was made during the pendency of proceedings in the tax court.

[6]The tax court's rules implicitly contemplate that factual disputes regarding the timing and amount of payments will be resolved as part of the tax court's determination of the amount of "deficiency, liability or overpayment." *See* Tax Court R. 155(b) (providing for the Tax Court to resolve disputes regarding the computation of overpayments).

involve a resolution of a taxpayer's liability for those years. *See Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 302 (1946) (holding that a theory of recoupment of a prior overpayment may not serve as a means to bring a time-barred refund claim due to finality concerns regarding determinations of tax liability). In this case, however, Martin does not seek a redetermination as to whether his tax liability for 1980 has been overpaid or underpaid. He contends instead that his $50,000 payment, in its entirety, was properly applicable to 1981 rather than 1980, and thus, that without regard to the relationship between the $50,000 payment and his 1980 liability (i.e. any overpayment or underpayment for 1980), the payment should be applied to 1981. If the tax court granted him the relief that he seeks, it would not be determining any deficiency or liability for 1980.

Second, the IRS notes that it is authorized to credit the amount of any overpayment against any tax liability of the taxpayer. 26 U.S.C.A. § 6402 (West 1989). In turn, the tax court may not "restrain or review any credit or reduction made by" the IRS under the authority of § 6402. 26 U.S.C.A. § 6512 (West Supp. 2001); *Savage v. Commissioner*, 112 T.C. 46, 51 (1999) (noting the tax court's lack of jurisdiction to review the IRS's credit of an overpayment). The IRS suggests that the relief Martin seeks in this case would involve forbidden tax court interference with the IRS's decision to credit an overpayment against another year's tax liability pursuant to § 6402. As we have noted above, however, Martin does not contend that he has overpaid his 1980 tax liability and that the *excess* of the $50,000 payment over his 1980 liability should be credited to his 1981 liability, as opposed to some other liability of the IRS's choosing. Instead, he contends that the entire $50,000 payment is properly attributable to 1981.[7] Consequently, Martin does not seek to "restrain or review" the

[7]Section 6512's limitation on the tax court's jurisdiction could have become relevant in this case had Martin prevailed on the merits of his claim that the $50,000 payment was applicable to 1981. In that circumstance, the resulting overpayment of approximately $49,000 for 1981 could have been credited to Martin's 1980 liabilities by the IRS, and the tax court would lack jurisdiction to restrain or review the IRS's decision to so credit the overpayment. 26 U.S.C.A. §§ 6402, 6512; *Belloff v. Commissioner*, 996 F.2d 607, 612 (2d Cir. 1993) (noting the IRS's power to apply an overpayment determined by the tax court to a taxpayer's liability for another tax year, thus defeating a refund claim).

IRS's credit of an overpayment to another year's liability.[8]

Accordingly, we conclude that the tax court's overpayment jurisdiction allowed it to determine whether the $50,000 payment properly was attributable to 1981. We now turn to an examination of the merits of the tax court's determination that the payment was not attributable to 1981.

### III.

The tax court determined that Martin in fact authorized Mathias & Berg to remit the $50,000 payment relative to his 1980 liability. We review this factual finding for clear error. *Eren v. Commissioner*, 180 F.3d 594, 596 (4th Cir. 1999). We resolve questions of law de novo. *Estate of Godley v. Commissioner*, 286 F.3d 210, 213 (4th Cir. 2002).

At the outset, Martin concedes that Mathias & Berg had apparent authority to direct the application of the $50,000 payment.[9] It is elemental that objective manifestations, and not subjective intentions, govern the proper application of funds, for tax debts as for other debts. *See Cindy's Inc. v. United States*, 740 F.2d 851, 852 (11th Cir. 1984) (holding that the taxpayer's manifest, not subjective, intent controls). Indeed, unless a taxpayer provides specific written instructions for the application of a voluntary payment, the IRS may apply the payment as it wishes. *See, e.g.*, Rev. Proc. 2002-26, 2002-15 I.R.B. 746 (providing that the IRS may apply a payment to any tax year unless the taxpayer provides express written instructions directing its application to a particular year); *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir. 1983) (approving of this principle); *see*

---

[8]The IRS also suggests that Martin's claim is a *de facto* refund action and is barred by the two-year statute of limitations provided by 26 U.S.C.A. § 6511(b)(2)(B) (West 1989). As we have noted above, however, a determination of overpayment would not necessarily result in a refund; the IRS could apply any overpayment against another year's liability pursuant to 26 U.S.C.A. § 6402. *Savage v. Commissioner*, 112 T.C. 46, 51 (1999).

[9]The IRS treats this concession as relevant to the jurisdictional issue discussed in Part II above; we believe it is more appropriately considered relative to the merits of Martin's claim.

*also In re DuCharmes*, 852 F.2d 194, 195 (6th Cir. 1988) (noting that an exception arises to the IRS's ability to credit a payment as it deems appropriate when a taxpayer expressly designates a voluntary payment as applicable to a particular liability); *In re Technical Knockout Graphics*, 833 F.2d 797, 800 (9th Cir. 1987) (same); *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964) (same). Here, Martin's attorneys explicitly directed the IRS to apply the $50,000 payment to Martin's 1980 liability. In order to establish that the payment should have been credited to his 1981 and 1982 liability, Martin would have to show that he provided the IRS with contemporaneous express instructions to that effect; he does not contend that he could make such a showing. The IRS cannot reasonably be expected to look behind the express instructions of a taxpayer's actually or apparently authorized representatives in crediting a payment.

Despite Martin's assertions that he was confused and intended to remit the $50,000 payment relative to his 1981 liability, the tax court did not clearly err in finding that he actually authorized Mathias & Berg to remit the payment against his 1980 liabilities. Ample evidence supports the tax court's finding to this effect. For example, Martin's August 9, 1996 letter accompanying the $50,000 payment stated that it was a partial payment of a joint liability. Martin and Rothhammer were divorced during the 1981 and 1982 tax years and had no joint liability for those years. Further, on August 14, 1996, shortly after Martin sent the $50,000 payment to Mathias & Berg, Mathias & Berg wrote both Martin and Rothhammer, noting that the $50,000 payment had been sent to the IRS for credit against Martin and Rothhammer's joint 1980 liability. No record evidence indicates that Martin timely communicated to Mathias & Berg that such application of the payment was improper. Several months after the August 14 letter was sent, Martin wrote to Mathias & Berg, stating that he would not be making payments additional to the $50,000 payment until Rothhammer had "matched that amount." (S.A. at 46.)

Finally, Martin claims that the law of the case doctrine precluded the tax court from finding that he authorized Mathias & Berg to forward the $50,000 payment relative to 1980, because the tax court earlier found that he did not authorize the filing of a tax court petition for that year. This argument fails because there is no inconsistency between a finding that Martin did not authorize the filing of the 1980

petition and a finding that he did authorize the forwarding of the $50,000 payment relative to 1980. Martin need not have challenged his 1980 liability to have made a payment towards that liability.

The IRS properly credited Martin's $50,000 payment to his 1980 liability based upon his attorney's express instructions. While the tax court had jurisdiction to entertain Martin's claim that the payment was properly applicable to his 1981 liability, the governing law squarely precludes Martin's contentions on the merits. The judgment of the tax court is therefore

*AFFIRMED*.