T.C. Memo. 2003-234

UNITED STATES TAX COURT

WILLIAM G. WELLS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 163-01L.                    Filed August 6, 2003.

William G. Wells, pro se.

Lorraine Y. Wu, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Pursuant to section 6330(d),[1] petitioner
seeks review of respondent's determination to proceed with
collection of his 1991 and 1992 tax liabilities.

_____

    [1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed the petition, petitioner resided in Santa Monica, California.

Until August 1995, for a period of approximately 25 years, petitioner was employed as the president of Fujita Corp.

In 1998, petitioner entered into an installment agreement with respondent as a method of paying his outstanding 1991 and 1992 income tax liabilities (1998 installment agreement). Pursuant to the 1998 installment agreement, instead of petitioner's receiving rental income payments from Miramar Hotel Corp. (Miramar), respondent was to receive monthly payments directly from the Miramar. Petitioner defaulted on the 1998 installment agreement when Miramar ceased making payments to respondent.

On August 4, 1999, respondent issued to petitioner a Notice of Defaulted Installment Agreement Under IRC 6159(b), Notice of Intent to Levy Under IRC 6331(b) for 1991 and 1992 and a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 1991 and 1992. As of this date, petitioner owed $1,387,786.98 for 1991 and $865,486.80 for 1992--a total of $2,253,273.78.

On or about September 3, 1999, petitioner submitted to

respondent a Form 12153, Request for a Collection Due Process

Hearing, regarding his 1991 and 1992 tax years (hearing request).

In explaining his disagreement with the proposed levy, petitioner

wrote "SEE ATTACHED LETTER". Petitioner attached to his hearing

request a 2-page letter from his representative, Steven Toscher.

The attached letter stated:

> As you are aware, Mr. Wells has not been able to
> continue the installment obligation entered into in
> July of 1998. The installment obligation was premised
> on Mr. Wells receiving $24,969 in rental income from
> Miramar Hotel leases. Unfortunately, as you are also
> aware, Mr. Wells is involved in litigation with Fujita
> USA which has caused the lessee to terminate the rental
> payments. Thus, Mr. Wells has no ability to continue
> to make said payments. Mr. Wells requests that IRS
> modify the agreement based upon his current ability to
> pay. A modification of an installment obligation will
> facilitate collection of such liabilities.
>
> Enclosed please find IRS Form 12153 where Mr. Wells
> requests a due process hearing pursuant to I.R.C.
> §6330(b) with respect to the IRS Notice of Intent to
> Levy. As stated above, a modified installment
> agreement or an Offer in Compromise are more
> appropriate collection alternatives given Mr. Wells'
> financial situation. Mr. Wells continues to explore
> any and all alternatives in satisfying the IRS'
> previous assessments. It will not be productive for
> the IRS or Mr. Wells to levy on any of his "assets."
>
> Please have the Appeals Officer assigned to this case
> call me to arrange a mutually convenient time to meet
> and discuss this matter.

On July 6, 2000, Appeals Officer Richard William Bailey and

Mr. Toscher met to hold a section 6330 hearing (July 6, 2000,

hearing).[2]  At the July 6, 2000, hearing, the issues raised by Mr. Toscher were the possibility of full payment of petitioner's 1991 and 1992 income tax liabilities, the renegotiation and revision of the 1998 installment agreement, and the possibility of an offer-in-compromise.  Mr. Toscher had no information regarding petitioner's financial status to provide to Appeals Officer Bailey.  Appeals Officer Bailey agreed to meet with Mr. Toscher again on November 9, 2000, to give petitioner the opportunity to present his financial information to respondent.

Before November 9, 2000, Appeals Officer Bailey filled out a "CDP Priority Case Action Plan".  He completed this form because the case was over 180 days old and the total tax liability was over $500,000.  In the section entitled "Action plan", Appeals Officer Bailey wrote:

> This taxpayer owes a lot of money and has many assets, the representative now realizes that the taxpayer may if [sic] fact have to full pay these deficiencies.  I have a 2nd hearing scheduled for 11/9/2000, at which time the representative should have a full accounting of the taxpayer's assets and ability to pay.  On that date either arrangement for full payment will be made or the taxpayer's representative will present an offer-in-compromise.  Case delayed due to open related cases in appeals.  Representative wanted those concluded first.

On November 9, 2000, Appeals Officer Bailey and Mr. Toscher met regarding petitioner's case (November 9, 2000, meeting).  Mr.

---

[2]  Appeals Officer Bailey was not involved in the approval of, or the notification of default on, the 1998 installment agreement.

Toscher still had no information regarding petitioner's financial status to provide to Appeals Officer Bailey.

On November 13, 2000, Mr. Toscher wrote to Appeals Officer Bailey. The letter thanked Appeals Officer Bailey for meeting with him, stated that Mr. Toscher understood that Appeals Officer Bailey could no longer hold on to the case and needed to issue a determination, and thanked Appeals Officer Bailey for his consideration of this matter.

Appeals Officer Bailey prepared an "Appeals Case Memo". In it, he wrote:

> The taxpayer has many holdings, both real estate and businesses. * * * although the taxpayer's corporate businesses may be legally titled to the taxpayer's wife, these corporations owe the taxpayer sizable amounts of money * * * . It appears now that the taxpayer may be able to full pay all of the outstanding taxes * * * . At Appeals last meeting with the taxpayer's representative on the CDP matter, such an accounting was still in the process of being made and the representative could not give Appeals a reasonable date for the conclusion of such accounting.

On December 5, 2000, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioner regarding his 1991 and 1992 tax years (notice of determination). In the notice of determination, respondent determined that the proposed levy was appropriate. The notice of determination explained:

> Along with your Form 12153, Request for a Collections Due Process Hearing, you offered no alternative to enforced collection, but suggested that your defaulted installment agreement might be renegotiated and

reinstituted.  At your due process hearing your
representative discussed disposition of the liabilities
through full payment or the possibility of making an
Offer-in-Compromise.  However, your representative was
unable to provide a comprehensive accounting of your
assets so that a determination might be made with
regard to the necessity of full payment or the
feasibility of an offer (nothing was presented upon
which a legal sufficiency determination could be
based), nor was an Offer-in-Compromise presented.  The
renegotiation and reinstatement of your installment
agreement is not possible because of the pending
assessments; your previous default; and, the amount of
the required payments considering all unpaid balance of
assessments will not pay the debt within the statute.

## OPINION

At trial, petitioner stated the only relief he is seeking is
a remand to the Appeals Office for further proceedings.[3]  Where
the validity of the underlying tax liability is not properly in
issue, we review respondent's determination for an abuse of
discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).

Petitioner testified that he suffered from a stroke in 1995
and hearing loss shortly thereafter.  As of April 1999,
petitioner began using hearing aids.  By October 1999, petitioner
felt the hearing aids were functioning well for him.

In October 1999, petitioner was evaluated by Eugene H.
Freed, M.D.[4]  Dr. Freed was an Agreed Medical Examiner, a

---

[3]  Petitioner's underlying tax liability is not in issue.

[4]  Although the record is unclear, this examination appears
to be part of petitioner's litigation with Fujita Corp.

Qualified Medical Examiner, and an Independent Medical Examiner.[5]
Based on a physical examination, Dr. Freed determined that
petitioner "was a well developed, sixty-seven year old well
nourished male not in acute distress," and petitioner "was alert
and cooperative." Dr. Freed concluded that petitioner's hearing
aids were adequate for his current hearing loss.

At the trial, the Court asked petitioner if he could hear us
and respondent. He answered, "Yes". Petitioner also stated that
his physical condition had improved.

Petitioner was represented by counsel at the July 6, 2000,
hearing and the November 9, 2000, meeting. Petitioner's physical
condition was not discussed at the July 6, 2000, hearing or the
September 9, 2000, meeting. During 2000, Appeals Officer Bailey
was not aware of petitioner's physical condition. See Magana v.
Commissioner, 118 T.C. 488 (2002).

Given the fact that respondent was not made aware of
petitioner's 1995 stroke or hearing loss and that petitioner was
represented by counsel, 4 months was a reasonable amount of time
to allow petitioner to submit his financial information.
Furthermore, the evidence petitioner provided at trial does not
suggest that he was physically unable to compile his financial

---

[5] The record does not contain an explanation of these titles.

records within this period of time, and there is no evidence that petitioner was unable to assist his attorney.

Petitioner did not submit an offer-in-compromise or any financial information to respondent. Respondent gave petitioner a reasonable amount of time to submit information about his financial condition.[6] We conclude that respondent's determination was not an abuse of discretion.[7]

Petitioner has failed to raise a spousal defense or make a valid challenge to the appropriateness of respondent's intended collection action. These issues are now deemed conceded. Rule 331(b)(4).

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[6] Additionally, petitioner provided no evidence of his financial condition at trial that could allow us to conclude that a remand of this case would prove to be helpful.

[7] We note that respondent also considered the fact that petitioner had defaulted on a prior installment agreement as an additional reason to proceed with collection.