T.C. Memo. 2003-288

UNITED STATES TAX COURT

ALFRED J. MARTIN, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13419-02L.                    Filed October 8, 2003.

Patricia Tucker, for petitioner.

Anne W. Durning and James E. Cannon, for respondent.

MEMORANDUM OPINION

MARVEL, Judge:  Pursuant to section 6330(d), petitioner
seeks review of respondent's determination to proceed with the
collection of petitioner's 1980 Federal income tax liability.[1]

---

[1]All section references are to the Internal Revenue Code in
effect at all relevant times, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and accompanying exhibits are incorporated herein by this reference.[2] Petitioner resided in Santa Fe, New Mexico, when he filed the petition.

During 1980, petitioner was married to Amilu Stewart (formerly Amilu Martin, formerly Amilu Rothhammer, and referred to herein as Amilu).[3] On April 15, 1981, petitioner and Amilu filed a joint Federal income tax return for 1980 (the 1980 joint return). Subsequently, respondent audited the 1980 joint return in connection with respondent's investigation of individuals involved in the Elektra Hemisphere tax shelters.[4]

On December 6, 1983, during respondent's examination of the 1980 joint return, petitioner signed Form 872-A, Special Consent to Extend the Time to Assess Tax. On June 7, 1988, respondent

[2]In the stipulation of facts, petitioner objected to the relevancy and materiality of certain stipulations drawn from the findings of fact in a related case involving petitioner, Martin v. Commissioner, T.C. Memo. 2000-187 (Martin I), affd. on other grounds 38 Fed. Appx. 980 (4th Cir. 2002). We overrule petitioner's objections with respect to those stipulations incorporated herein, because we conclude that those stipulations are relevant to our discussion of the limitations issue.

[3]Petitioner and Amilu divorced in 1981.

[4]Before 1980, petitioner and Amilu purchased a limited partnership interest in Winchester Oil, one of the Manhattan group partnerships, which were the subject of the Elektra Hemisphere tax shelter litigation in this Court. See Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994).

issued notices of deficiency to petitioner at his last known address in Suffolk, Virginia (the notice), and to Amilu at her address in Colorado Springs, Colorado (Amilu's notice). The U.S. Postal Service later returned the notice sent to petitioner in Suffolk, Virginia, marked "undeliverable as addressed, no forwarding order on file". Petitioner did not receive a copy of the notice.[5]

On September 6, 1988, Jeffrey Berg, an attorney representing limited partners in the Elektra Hemisphere tax shelter litigation, filed a petition with this Court on behalf of petitioner and Amilu seeking a redetermination of their 1980 deficiency.[6] Mr. Berg attached to the petition a copy of Amilu's notice. In Martin v. Commissioner, T.C. Memo. 2000-187 (Martin I), affd. on other grounds 38 Fed. Appx. 980 (4th Cir. 2002), we granted petitioner's request to dismiss him from the 1980 deficiency case for lack of jurisdiction, concluding that petitioner did not file, authorize the filing of, or ratify the filing of the petition Mr. Berg signed and submitted. The

---

[5]Although petitioner did not receive the notice, Arthur Robb, petitioner's authorized representative pursuant to Form 2848, Power of Attorney and Declaration of Representative, received a copy. Respondent does not contend in this case that receipt of the notice by Mr. Robb qualified as receipt by petitioner for purposes of sec. 6330(c)(2)(B).

[6]On Aug. 4, 1986, at petitioner's request, Mr. Berg had filed a petition for redetermination of petitioner's 1981 and 1982 income tax deficiencies.

dismissal order was not appealed and became final on September 25, 2000.

On November 20, 2000, respondent assessed income tax of $56,771 and interest of $456,023.09 and sent petitioner a notice of balance due.[7]  On November 29, 2001, respondent issued a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing.  On December 14, 2001, petitioner timely submitted Form 12153, Request for a Collection Due Process Hearing, requesting a hearing under section 6330 (the hearing).

On July 10, 2002, petitioner's counsel attended the hearing conducted by Appeals Officer Joann Mares.  At the hearing, petitioner's counsel argued that the statutory limitations period for assessment (the limitations period) had expired before respondent assessed petitioner's 1980 income tax liability. Petitioner's counsel raised no other issues at the hearing.  With respect to alternative collection methods, petitioner's counsel expressed interest in discussing an installment agreement at a later date if Appeals Officer Mares determined that the limitations period had not expired before respondent's assessment.  Petitioner's counsel did not provide any financial information at the hearing or propose an actual installment agreement to Appeals Officer Mares.

---

[7]The amount of the assessment was reduced by payments and credits totaling $140,944.67 to arrive at the balance due.

On July 22, 2002, the Appeals Office issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) in which it determined the following:

1. All legal and procedural requirements for the issuance of the Notice of Intent to Levy had been met.

2. The limitations period had not expired prior to respondent's assessment of petitioner's 1980 income tax liability.

3. Petitioner did not offer collection alternatives; he refused to provide financial information or otherwise explore alternative collection methods at the hearing.

4. The proposed levy action balanced the need for efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary and was appropriate under the circumstances.

On August 20, 2002, petitioner filed a timely petition with this Court appealing respondent's determination. In his petition, petitioner alleged that the limitations period had expired before respondent assessed petitioner's 1980 income tax liability. Specifically, petitioner claimed:

> The Petition filed in [Martin I] was not a Petition "in respect to the deficiency" for 1980 of Petitioner because he did not authorize or ratify the filing of the Petition on his behalf and because the Petition as filed, and as amended within the jurisdictional period, did not attach a copy of the Statutory Notice of

Deficiency issued to him individually at his last known address.

In the alternative, if we conclude that the limitations period did not expire, petitioner contends that we should remand the case to Appeals for the discussion of collection alternatives.[8]

## Discussion

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made. If the person makes a timely request for a hearing, a hearing shall be held by the Internal Revenue Service Office of Appeals. Sec. 6330(b)(1). At the hearing, a taxpayer may contest the existence and amount of the underlying tax liability if the taxpayer did not receive a notice of deficiency for the tax in question or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must make a determination whether the proposed levy action may proceed. In so doing, the Appeals Office is required to take into consideration the verification presented by the Secretary, the issues raised by the taxpayer, and whether the proposed collection action appropriately balances the need for efficient

---

[8]Petitioner raised this contention for the first time on brief.

collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3). The taxpayer may petition the Tax Court or, in limited cases, a Federal District Court for judicial review of the Appeals Office's determination. Sec. 6330(d).

If the taxpayer files a timely petition for judicial review, the applicable standard of review depends on whether the underlying tax liability is at issue. Where the underlying tax liability is properly at issue, the Court reviews any determination regarding the underlying tax liability de novo. Sego v. Commissioner, supra at 610. The Court reviews any other administrative determination regarding the proposed levy action for abuse of discretion. Id. In the instant case, we need not decide which standard of review applies to the limitations period determination, for our holding would be the same regardless of whether we review respondent's determination de novo or for abuse of discretion.

## I. The Limitations Issue[9]

Section 6501(a) generally requires that the Commissioner assess income tax within 3 years after the taxpayer filed the return. The mailing of a notice of deficiency to the taxpayer, pursuant to section 6212, suspends the limitations period--

_____

[9]Respondent does not contend that sec. 6330(c)(2)(B) precludes us from considering this issue. Cf. Rodriguez v. Commissioner, T.C. Memo. 2003-153.

for the period during which the Secretary is prohibited from making the assessment[10] * * * (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

Sec. 6503(a)(1).

Petitioner contends that the petition Mr. Berg filed and we dismissed in Martin I (hereinafter referred to as the petition) was an "erroneous filing", which did not place "a proceeding in respect of a deficiency" on our docket. Petitioner alleges two specific "filing errors" with respect to the petition: (1) Petitioner lacked knowledge of the filing and did not consent to it, and (2) the petition, although purportedly filed on both petitioner and Amilu's behalf, contained only a copy of Amilu's notice. According to petitioner, these "filing errors" rendered the petition a "nullity" or "materially defective", and, therefore, the filing of the petition did not suspend the limitations period.

### A. The Effect of an Unauthorized Petition on the Limitations Period

Petitioner contends that a petition filed without the taxpayer's authorization or ratification, and later dismissed, has "no effect on" the limitations period. According to petitioner, Mr. Berg was a "mere interloper" and, therefore, did

---

[10]The prohibited assessment period referred to in sec. 6503(a)(1) includes the time during which the taxpayer may file a petition with this Court. See sec. 6213(a).

not have the authority to bind petitioner to what was, in effect, an agreement to extend the limitations period. In so arguing, petitioner compares the petition to a written agreement, such as a Form 872-A, that purports to extend the limitations period but, in fact, is signed by an unauthorized party.[11] We disagree with petitioner's characterization of both the petition and Mr. Berg for the reasons discussed below.

Congress originally enacted the predecessor to section 6503(a)(1) as section 277 of the Revenue Act of 1928, ch. 852, 45 Stat. 791, which became section 277 of the Internal Revenue Code of 1939. In the legislative history of section 277, Congress addressed the effect of a defective petition on the limitations period:

> The decision dismissing the appeal may not be made until months after the proceeding was begun and there is some question whether in such cases the statute of limitations on assessment is actually suspended during the pendency of the proceeding. It is specifically provided in section 277 that the limitation period shall be suspended, if any proceeding is placed on the docket of the Board, until the decision of the Board in respect thereof becomes final and for 60 days thereafter.[12]

---

[11]Sec. 6501(c)(4) authorizes extension agreements between the Secretary and the taxpayer. Pursuant to sec. 6903, the taxpayer may authorize a third party to act as his representative and enter an agreement to extend the limitations period. See Balkissoon v. Commissioner, T.C. Memo. 1992-223, affd. 995 F.2d 525 (4th Cir. 1993).

[12]References to the "Board" are to the Board of Tax Appeals, the predecessor of this Court.

H. Rept. 2, 70th Cong., 1st Sess. (1927), 1939-1 C.B. (Part 2) 384, 399-400; see also S. Rept. 960, 70th Cong., 1st Sess. (1928), 1939-1 C.B. (Part 2) 409, 431.

In Eversole v. Commissioner, 46 T.C. 56 (1966), the taxpayers contended that the petition, which an improper party had filed on the estate's behalf and this Court had dismissed as to the estate, failed to suspend the limitations period. Relying on the legislative history of section 277 of the Internal Revenue Code of 1939, a predecessor of section 6503(a)(1) (quoted supra), as well as statutory language and relevant case law,[13] we held that the petition suspended the limitations period. Id. at 64-65. In reaching our conclusion, we found it significant that the language of section 277 of the Internal Revenue Code of 1939 required suspension of the limitations period when a proceeding "is placed" on the docket rather than when "the taxpayer places" a proceeding on the docket. Id. at 64.

Petitioner attempts to distinguish Eversole from the instant case on the basis of the improper party's relationship to the

---

[13]One such case on which we relied was Am. Equitable Assurance Co. v. Helvering, 68 F.2d 46 (2d Cir. 1933), affg. 27 B.T.A. 247 (1932). Responding to a similar challenge to the limitations period, the Court of Appeals for the Second Circuit concluded that "the mere placing on the docket of the Board of a proceeding in respect to the deficiency" suspended the limitations period. Id. at 47. The Court of Appeals for the Second Circuit reasoned that "Congress did not intend to have the time a proceeding was pending before the Board counted any more when the decision was a dismissal for want of jurisdiction than when it was not." Id.

taxpayer. In <u>Eversole v. Commissioner</u>, <u>supra</u> at 57, the improper party was the decedent's widow and, formerly, executrix of his estate. In contrast, petitioner argues, Mr. Berg was nothing more than an "interloper". We find this distinction unpersuasive. Not only does it ignore that Mr. Berg was petitioner's counsel in a related case involving his 1981 and 1982 deficiencies, but petitioner's argument completely ignores our discussion of the law in <u>Eversole</u>.

According to petitioner, we should apply instead the holding of <u>Kirch v. United States</u>, 83 AFTR 2d 99-2153, 99-1 USTC par. 50,452 (S.D. Ohio 1999). In <u>Kirch</u>, the taxpayers, also former Elektra Hemisphere tax shelter investors, asserted that the petition they filed with this Court, which we had dismissed for lack of jurisdiction, failed to suspend the limitations period. The taxpayers had filed the petition <u>before</u> the Commissioner's issuance of a notice of deficiency. Accordingly, the District Court concluded that because the Commissioner had not issued a notice of deficiency, the filing of the petition with this Court had not placed a "proceeding in respect of the deficiency" on the docket. <u>Id.</u>

Unlike <u>Kirch</u>, in the present case respondent issued a valid notice of deficiency before Mr. Berg filed the petition. Although petitioner did not authorize Mr. Berg to file the petition, the petition nevertheless placed a "proceeding in

respect of the deficiency" on our docket and suspended the limitations period.[14]

B. <u>Failure To Attach the Notice</u>

Petitioner further contends that because Mr. Berg attached only Amilu's notice to the petition, the petition was not filed with respect to <u>petitioner's</u> share of the joint deficiency. As a result, petitioner asserts, the petition did not confer jurisdiction upon this Court and failed to suspend the limitations period.[15]

---

[14]We note that petitioner's position on this issue is also unacceptable from a policy perspective for several reasons. First, the petition in Martin I was pending in this Court for more than a decade before petitioner moved to dismiss it, by which time, according to his theory, the assessment period had run. Disabling the assessment and collection of tax in that fashion is clearly not what Congress intended. See <u>O'Neill v. United States</u>, 44 F.3d 803, 806 (9th Cir. 1995). Second, a strong presumption of authority is afforded to counsel when filing a petition in this Court. See Rule 33; <u>Gray v. Commissioner</u>, 73 T.C. 639, 646-647 (1980).

[15]We have already rejected this argument as it relates to our jurisdiction in a prior proceeding involving petitioner and respondent that arose out of Martin I. In <u>Rothhammer v. Commissioner</u>, T.C. Memo. 2001-46, petitioner unsuccessfully sought litigation costs under sec. 7430. Petitioner contended that Mr. Berg's failure to attach the notice, as required by Rule 34(b)(8), deprived this Court of jurisdiction. Petitioner cited cases, as he does now, in which the taxpayers' original petitions failed to name certain taxpayers or include all tax years for which the Commissioner made a determination. We found that, in contrast to the petitions filed in those cases, the petition Mr. Berg filed named petitioner and clearly contested petitioner's 1980 income tax deficiency. Accordingly, in <u>Rothhammer</u>, we rejected petitioner's argument.

On brief, respondent discussed our decision in <u>Rothhammer</u>
(continued...)

The two requirements for our jurisdiction in a deficiency case are a valid notice of deficiency issued by the Commissioner and a timely petition filed by the taxpayer. Frieling v. Commissioner, 81 T.C. 42, 46 (1983). The content of a petition filed in a deficiency case should conform to Rule 34(b). Rule 34(b)(8) provides that the petition shall contain: "A copy of the notice of deficiency * * * which shall be appended to the petition".

This Court has consistently followed a liberal policy with respect to treating as petitions documents timely filed by taxpayers and intended as petitions. O'Neil v. Commissioner, 66 T.C. 105, 107 (1976). However, we cannot treat a document as a petition without "some objective indication that the taxpayer contests the deficiency determined by respondent against that taxpayer." Normac, Inc. v. Commissioner, 90 T.C. 142, 147-148 (1988); see also O'Neil v. Commissioner, supra. At a minimum, for purposes of our jurisdiction, an intended petition must contain (1) the amount of the deficiencies determined against the taxpayer, (2) the amount the taxpayer is contesting, and (3) the

---

¹⁵(...continued)
but did not specifically argue that petitioner is collaterally estopped from raising the issue again in this proceeding. Even if respondent intended the discussion of Rothhammer as a collateral estoppel argument, respondent did not raise it as a defense in the pleadings, and we therefore deem it waived. See Rule 39; Sundstrand Corp. v. Commissioner, 96 T.C. 226, 349 (1991).

years in dispute. InverWorld, Ltd. v. Commissioner, 98 T.C. 70, 86 (1992), affd. 979 F.2d 868 (D.C. Cir. 1992). The petition clearly conformed to all three requirements.

Petitioner insists that a separate notice of deficiency must be attached with respect to each taxpayer involved in a deficiency case. In support of his position, petitioner mistakenly relies on cases in which the petitions did not list all of the taxpayers' names or all of the taxable years at issue. See Normac, Inc. v. Commissioner, supra; O'Neil v. Commissioner, supra; Estate of DuPuy v. Commissioner, 48 T.C. 918 (1967). In this case, the petition that Mr. Berg filed listed both petitioner and his former wife as petitioners and included, as an attachment, a copy of the notice of deficiency issued with respect to the 1980 joint Federal income tax return of petitioner and his former wife.

Although this Court ultimately dismissed the petition in Martin I for other jurisdictional reasons, Mr. Berg's failure to attach the notice did not invalidate the petition with respect to petitioner and did not deprive us of jurisdiction. Consequently, the filing of the petition placed a proceeding with respect to petitioner's 1980 income tax deficiency on our docket and suspended the limitations period.

II. Installment Agreement Alternative

For the first time on brief, petitioner argues in the

alternative that we should remand the case to Appeals for the discussion of collection alternatives. Specifically, petitioner claims that he and Appeals Officer Mares made an "agreement" to later explore the possibility of an installment agreement if we concluded that the limitations period had not expired before respondent's assessment. Respondent opposes petitioner's request for the following reasons: (1) The issue is deemed conceded; and (2) petitioner "is entitled to only one hearing" under section 6330. We consider each of respondent's arguments in turn.

A. Whether Petitioner Conceded the Installment Agreement Issue

When appealing to this Court pursuant to section 6330(d), a taxpayer may raise in his petition any issues that he raised at the Appeals hearing. See sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs. In this case, the question of an installment agreement was raised by petitioner at the hearing in that petitioner's counsel expressed interest in discussing such an agreement depending on the resolution of the limitations issue.

Respondent does not argue that the issue of an installment agreement never came up at the hearing. Rather, respondent argues that, because petitioner did not raise the installment agreement issue in his petition, the issue is deemed conceded. Respondent relies on Rule 331(b)(4), which provides that "Any issue not raised in the assignments of error shall be deemed to be conceded."

Although petitioner did not raise the installment agreement argument in his petition, petitioner may pursue the argument as long as his failure to provide respondent with notice of the argument did not prejudice respondent. See Pagel, Inc. v. Commissioner, 91 T.C. 200, 212 (1988), affd. 905 F.2d 1190 (8th Cir. 1990). The existence of prejudice depends on "the amount of surprise and the need for additional evidence on behalf of the party opposed to the new position." Id. Upon examination of the record,[16] we find no prejudice to respondent, and we consider the issue.

B. Whether a Remand of the Case to Appeals Is Appropriate

Taxpayers are entitled to only one section 6330 hearing for the taxable period for which the tax is unpaid. Sec. 6330(b)(2). After the hearing, the Appeals Office maintains jurisdiction over

[16]On the basis of evidence in the record, we find it unlikely that petitioner's failure to raise the collection alternatives issue in the pleadings unduly surprised respondent or prevented respondent from submitting any necessary, additional evidence. In the stipulation of facts, respondent stipulated that consideration of an installment agreement "was deferred pending the resolution of the statute of limitations issue." On petitioner's Form 12153, Request for a Collection Due Process Hearing, submitted as an exhibit, he claimed to "[retain] the right to request collection arrangements other than collection by levy if any liability is determined to be valid." Additionally, after the hearing, in the notice of determination, also submitted as an exhibit, Appeals Officer Mares discussed petitioner's counsel's refusal to consider an installment agreement at the hearing. Appeals Officer Mares noted that petitioner's counsel would not discuss the installment agreement "because she [believed] the assessment was barred by statute" and concluded that "[petitioner] declined an offer to explore collection alternatives to the proposed collection action."

its determination with respect to the collection action and may hold subsequent hearings with the taxpayer. Sec. 6330(d)(2); sec. 301.6330-1(h)(1), Proced. & Admin. Regs. However, any subsequent hearing is not treated as a continuation of the original section 6330 hearing and, therefore, is not appealable to this Court. Sec. 301.6330-1(h)(2), Q&A-H1 and H2, Proced. & Admin. Regs.

In Lunsford v. Commissioner, 117 T.C. 183, 189 (2001), we acknowledged that "there may be cases where taxpayers were not given a proper opportunity for an Appeals hearing, where it will be appropriate for this Court to require that an Appeals hearing be held." Accordingly, we return a case to Appeals if we consider a rehearing "necessary or productive".[17] See id.; Moore v. Commissioner, T.C. Memo. 2003-1.

Petitioner bases his request for a remand on the alleged agreement he had with respondent to discuss an installment agreement after resolving the limitations period issue. Without addressing the alleged agreement, respondent asserts that the proper context for any alternative collection method discussion at this point is with "appropriate IRS personnel in accordance with the normal procedures for such matters", not at another section 6330 hearing. We find no credible evidence of an

[17]For an example of cases that we remanded to the Appeals Office, see Keene v. Commissioner, 121 T.C. __ (2003), and Harrell v. Commissioner, T.C. Memo. 2003-271.

agreement between the parties to hold a section 6330 hearing after this proceeding in order to discuss an installment agreement. Moreover, we do not find that a remand in this case is necessary or would be productive. Respondent has expressed a willingness to discuss an installment agreement with petitioner pursuant to the proper procedures.[18]

At the hearing, Appeals Officer Mares gave petitioner's counsel the opportunity to discuss an installment agreement and provide the requisite financial information. Petitioner's counsel declined to discuss an installment agreement at that time and did not supply any financial information. Consequently, respondent determined that petitioner refused to explore collection alternatives at the hearing. We review respondent's determination for abuse of discretion. Black v. Commissioner, T.C. Memo. 2002-307.

Installment agreements are based on the taxpayer's current financial condition. See sec. 6159; sec. 301.6159-1, Proced. & Admin. Regs.; 2 Administration, Internal Revenue Manual (CCH), 5.19.1.5.4.1, at 18,299-50; Form 433-D, Installment Agreement. Because petitioner failed to provide financial information for

---

[18]We note that the legislative history of sec. 6330 provides in part that "A taxpayer could apply for consideration of new information, make an offer-in-compromise, request an installment agreement, or raise other considerations at any time before, during, or after the Notice of Intent to Levy hearing." H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 755, 1020 (emphasis added).

review at the hearing, Appeals Officer Mares could not properly consider an installment agreement at that time. See Wells v. Commissioner, T.C. Memo. 2003-234.[19] Accordingly, we conclude that respondent's determination with respect to collection alternatives was not an abuse of discretion.

Petitioner has failed to demonstrate that the proposed levy action is inappropriate, another collection alternative is more appropriate, or some other relevant issue adversely affects respondent's proposed collection activity. We therefore conclude that respondent's determination to proceed by levy with the collection of petitioner's 1980 income tax liability was not an abuse of discretion.

We have considered the remaining arguments of both parties for results contrary to those expressed herein and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.

---

[19]We also note that, for purposes of this proceeding, petitioner did not introduce into evidence any information regarding his financial condition that would suggest a remand is appropriate. See Wells v. Commissioner, T.C. Memo. 2003-234.