T.C. Memo. 2014-42

UNITED STATES TAX COURT

JUDY MACDONALD, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26118-08L.                    Filed March 11, 2014.

Judy Macdonald, pro se.

Heather L. Lampert and Cindy L. Wofford, for respondent.

MEMORANDUM OPINION

HOLMES, Judge:  Judy Macdonald has been filing frivolous tax returns or

no returns at all since at least 1985.  The Commissioner finally caught on and filed

notices of federal tax lien (NFTLs) covering 18 years; he also assessed frivolous-

return penalties against her for 12 of them.  Since then, Macdonald has only made

[*2] more frivolous arguments. She demanded a collection due process (CDP) hearing and then failed to show up. She petitioned this Court, and then refused to engage in informal discovery, never signed a stipulation of facts, and didn't appear at calendar call.

We'd usually dispose of such a case with a quick order. What makes this case unusual is that the Appeals officer determined--at the CDP hearing that Macdonald skipped--several points in her favor. He then issued a notice of determination that concluded that tax assessments for six of the years were invalid. The Commissioner objected to this conclusion, and the Appeals officer then testified at an abbreviated trial. He said he was well and truly mistaken, and he even joined in the Commissioner's request that he be found to have abused his discretion in ruling, even in part, in favor of the absent nontaxpayer.

This was an odd request, oddly made, and we asked the parties to brief the question of what we should do.

## Background

Macdonald failed to submit a proper return for each of the tax years in question. For tax years 1985-97, Macdonald filed Forms 1040NR, U.S. Nonresident Alien Income Tax Return. On the forms, she consistently took frivolous positions--inserting "N/A" in various spaces. She also listed her country

**[*3]** as "USA National, AKA natural born free Citizen Constitutionally, Oregon Republic," and included a brief message at the bottom of each form:

> With express reservations of my Unalienable Rights, of my Constitutional Privileges and Immunities (at 4:2:1), and of the lesser UCC/Uniform Commercial Code (at 1.207) "with reservation of all our rights," for the Record.

The Commissioner understandably regarded these returns coming from an American citizen living in Arizona as frivolous and assessed against her a frivolous-return penalty under section 6702(a)[1] for each of the years she did this-- tax years 1985-97. For tax years 1998-2003, Macdonald simply didn't submit any tax returns at all, and the Commissioner prepared substitutes for returns for those years. He then sent her notices of deficiency for tax years 1986-87 and 1989-2003. She never filed a case with us challenging these notices.

In 2008 the Commissioner began trying to collect the overdue taxes and penalties. He sent NFTLs to her, and Macdonald asked for a CDP hearing. In her request, she attached a generic list of reasons for demanding a hearing and checked every single box on the form, notably including spousal relief--notable

---

[1] All section references are to the Internal Revenue Code in effect at all relevant times, unless we say otherwise. All Rule references are to the Tax Court Rules of Practice and Procedure.

[*4] because she had no joint liabilities and therefore, cannot possibly win relief from having filed a joint return. See sec. 6015(a).

She also argued that:

- the administrative record was invalid and incomplete, thereby making collection actions inappropriate;

- she didn't have an opportunity to dispute her tax liabilities because the Commissioner didn't send her notices of deficiency;

- the revenue officer didn't meet the requirements of all applicable law and administrative procedure, and the collection action was intrusive under section 6330;

- the Commissioner didn't send her CDP notice or copies of the NFTLs; and

- the civil penalty for 2003 wasn't applicable because she had begun a case that was still pending.

Macdonald also told Appeals that she intended to make an audio recording of her hearing under section 7521 and that she was withdrawing any positions classified as "frivolous or groundless."

The Appeals officer who conducted the hearing used the Commissioner's internal information, including computer transcripts, to verify that all legal and procedural requirements had been met. These allowed him to confirm that the statute of limitations had not run because Macdonald had filed for bankruptcy protection so many times during the years in question. See, e.g., In re Macdonald,

[*5] No. 02-11090 (Bankr. D. Ariz. Nov. 6, 2002) (order granting motion to dismiss with prejudice) (finding bad faith and barring Macdonald from filing another petition for five years); In re Macdonald, No. 03-10856 (Bankr. D. Ariz. Aug. 20, 2003) (order dismissing case with prejudice) (directing clerk of bankruptcy court not to accept any new petitions from Macdonald for six years).

In a first notice of determination, the Appeals officer sustained the lien filing and all of Macdonald's tax liabilities. Macdonald petitioned us, and the Commissioner then conceded that at least a few of her arguments were not necessarily frivolous. The Commissioner's practice is to offer face-to-face hearings to taxpayers who raise nonfrivolous arguments. Since the record was unclear about whether the Appeals officer had offered such a hearing to Macdonald, the Commissioner suggested that we remand the case for a supplemental, and face-to-face, hearing. We agreed.

Macdonald didn't raise any additional issues in this supplemental hearing. She did not even show up, although the Appeals officer rescheduled it twice at her request. In the end, he closed out the case by determining that the assessments for Macdonald's 1986-97 tax years and the liens imposed to collect them were valid, as were all of the civil penalties. But this time around he determined that the

**[\*6]** 1998-2003 assessments were invalid. He issued a supplemental notice of determination reflecting his conclusions.

We then restored the case to the general docket. But, even so, Macdonald didn't cooperate in discovery, agree to a stipulation of facts, or appear at calendar call. The usual rule here is to dismiss for default or failure to properly prosecute. Rule 123. But in this case, the Commissioner himself challenged the determination not to proceed with collection of Macdonald's 1998-2003 taxes, and during a brief trial asked us to let him amend the supplemental notice of determination.

The Commissioner's argument was simple: The Appeals officer had abused his discretion by applying the wrong rule of law when he mistakenly reasoned that he had to verify whether Macdonald had *received* the notices of deficiency sent to her for those tax years, and not simply whether the IRS had sent them to her last known address. See sec. 6212(b). He asks us to rely on the credible testimony at trial from the Appeals officer saying that he had made a mistake.

Failing to cooperate once again, Macdonald failed to send us her posttrial brief. The trial took place in Texas, where Macdonald is currently a resident.

**[*7]** <u>Discussion</u>

We begin with the easy part. The Appeals officer determined that the liens against Macdonald's property with respect to her tax liabilities for the years 1986-97 were valid, as were all the penalties. We agree. Rule 123 allows us to enter a default judgment against Macdonald for failing to "plead or otherwise proceed as provided by" the rules of this Court. <u>See</u> <u>Smith v. Commissioner</u>, 91 T.C. 1049, 1056 (1988), <u>aff'd</u>, 926 F.2d 1470 (6th Cir. 1991); <u>Braden v. Commissioner</u>, T.C. Memo. 1994-496, 1994 WL 551488, at *3. Macdonald failed in this manner, and this is more than enough reason to enter a decision against her on those issues under Rule 123. <u>See, e.g.</u>, <u>Smith v. Commissioner</u>, 91 T.C. at 1058.

But what about the issues on which the Appeals officer found in Macdonald's favor? He determined that the notices of federal tax lien for Macdonald's 1998-2003 tax liabilities were invalid because he was unable to verify that Macdonald lived at the address to which the Commissioner mailed the notices of deficiency, and so couldn't determine whether she had actually received those notices. The Commissioner did not question this part of the determination in any pleading. It was only when the calendar call neared that the Commissioner's counsel seems to have recognized something was off: The law requires proof only that notification was properly sent to a taxpayer's "last known address"--not that

**[*8]** the taxpayer actually received it. Sec. 6212(b)(1). There is, however, no statutory definition of "last known address," and the resulting gap has been filled with a "plethora of case law decided by this and other courts." Marks v. Commissioner, T.C. Memo. 1989-575, 1989 WL 125694, at *3, aff'd, 947 F.2d 983 (D.C. Cir. 1991).

The general rule, the Commissioner tells us now, is what we held in Abeles v. Commissioner, 91 T.C. 1019, 1035 (1988), that "a taxpayer's last known address is that address which appears on the taxpayer's most recently filed return, unless respondent has been given clear and concise notification of a different address." Macdonald had not filed a return--even a frivolous return--for any of the years 1998-2003, and the Appeals officer correctly noted that the notices of deficiency for those years, which he mailed in 2004 and 2005, were mailed to the address she had put down on the last frivolous return she had filed.

Macdonald had sent a letter to the IRS in 2003 with a different address--and it's unclear if that different address was just on a return-address label on the envelope or on the letter itself. But neither would be enough by itself, it would seem, to change a taxpayer's "last known address." In Tadros v. Commissioner, 763 F.2d 89 (2d Cir. 1985), for example, a taxpayer who lived in New York when he filed his 1981 tax return had moved to New Jersey in January 1983. He argued

**[\*9]** that he had told the Commissioner of his move to New Jersey in a letter he had written to the IRS in January 1983 on stationery printed with his New Jersey address. Id. at 92. His letter asked for copies of correspondence and said that he needed the copies to replace originals that he had "lost or misplaced in the process of moving." Id.

The Second Circuit held that the letter was a mere "routine inquiry," not amounting to an official change of address: The letter "indicated neither that Tadros had permanently moved, nor whether the Jersey City address on the letterhead was his new place of residence. Nor did it mention the old address or indicate that it was no longer to be used." Id.

Simply putting a different return address on an envelope or letter mailed to the IRS is not enough. The Commissioner realizes this now, and asks that we decide that the supplemental notice of determination was invalid and that we uphold the NFTLs for the years 1998-2003. Unsure of exactly what to call this motion, he labeled it a motion to conform the pleadings with the proof.

It is unclear if we can do anything about this ourselves. We are a court of limited jurisdiction, see sec. 7442; Kluger v. Commissioner, 83 T.C. 309, 314 (1984), and section 6330(d) says that a taxpayer may "appeal such determination

**[*10]** * * * to the Tax Court (and the Tax Court shall have jurisdiction with respect to *such matter*)." (Emphasis added.) "Such matter" must include "such determination," even if it extends to the entire collection action that is the subject of the determination. But the unusual position that the Commissioner finds himself in raises several intricate questions:

- What allows us to broaden the subject matter of our review from the portions of the determination that a petitioner challenges to portions that the Commissioner disagrees with?

- Does such a challenge by the Commissioner involve a jurisdictional problem of standing?--after all, the Code gives standing to appeal only to the taxpayer, not to "any aggrieved person" or similarly broader class.[2]

---

[2] Standing of course is a doctrine mostly about who gets to be a plaintiff (or petitioner). The Commissioner argues by analogy to his undoubted right to argue in favor of an increased deficiency, see sec. 6214(a); Evans Publ'g, Inc. v. Commissioner, 119 T.C. 242, 250 (2002), which certainly can come up in a trial, see, e.g., Richardson v. Commissioner, 76 T.C. 512, 530-31 (1981), aff'd, 693 F.2d 1189 (5th Cir. 1982), that he should be able to challenge part of a determination that we have jurisdiction over. A closer analogy, however, would be to treat the Commissioner's contentions as a counterclaim. And counterclaims --generally speaking--are subject to the rules of standing. See, e.g., United States v. Vazquez, 145 F.3d 74, 80-81 (2d Cir. 1998). In determining whether a party has standing, however, we should "bear in mind that [we are] not an Article III court and, therefore, [are] not fully constrained by Article III's case or controversy limitation." Baranowicz v. Commissioner, 432 F.3d 972, 975 (9th Cir. 2005). We take our cue regarding standing from the Code--and not from Article III.

- 11 -

**[\*11]** ●     Would it matter that the Commissioner could not himself petition to challenge the determination?[3]

We think it best in such an uncertain situation to remand the case a second time: We've hinted in the past that we can remand if it would be "helpful". See Wells v. Commissioner, T.C. Memo. 2003-234, 2003 WL 21804105, at *4 n.6, aff'd, 108 Fed. Appx. 440 (9th Cir. 2004); see also Ashlock v. Commissioner, T.C. Memo. 2008-58, 2008 WL 631255, at *3 (noting taxpayer declined remand to consider changed financial circumstances). Phrased another way, "we return a case to Appeals if we consider a rehearing 'necessary or productive.'" Martin v. Commissioner, T.C. Memo. 2003-288, 2003 WL 22300455, at *6 (quoting Lunsford v. Commissioner, 117 T.C. 183, 189 (2001)), aff'd, 436 F.3d 1216 (10th Cir. 2006).

---

[3] There is precedent for the government's suing itself, e.g., United States v. ICC, 337 U.S. 426, 431 (1949) (recognizing the anomaly but finding that the "situation result[ed] from the statutes [at issue] defining the Attorney General's duties"); and for a federal agency to sue a federally owned corporation, e.g., TVA v. Whitman, 336 F.3d 1236, 1239 (11th Cir. 2003). See generally Louis L. Jaffe, "Standing to Secure Judicial Review: Private Actions," 75 Harv. L. Rev. 255, 299-300 (1961) (but noting the disputing agencies have to be sufficiently independent of one another).

[*12] And that is what we'll do here.[4]

An appropriate order will be

issued.[5]

---

[4] We also note that when we remand a case to IRS Appeals, "the further hearing is a supplement to the taxpayer's original section 6330 hearing, [and] not a new hearing." Kelby v. Commissioner, 130 T.C. 79, 86 (2008). The Commissioner then issues supplemental determinations after the further hearing, which we can review. Id. Once the Commissioner issues supplemental determinations, however, we cannot review any of the prior notices of determination. See id. ("[T]he position of the Commissioner that we review is the position taken in the last supplemental determination.") We would expect to apply this principle to any supplemental determination in this case, even one that corrected what seemed to be an obvious mistake.

[5] The Commissioner also urges us to sanction Macdonald under section 6673 for her history of frivolousness. Macdonald, however, is a first-time offender in this Court. Her choice to default meant that she didn't waste too much of our time, and we are upholding the collection of several years' worth of penalties for her submission of frivolous returns. We'll therefore let her off with a warning that any frivolous future litigation will subject her to penalties of up to $25,000.