T.C. Memo. 2000-187


UNITED STATES TAX COURT


ALFRED J. MARTIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ALFRED J. MARTIN, JR. and AMILU S. ROTHHAMMER
f.k.a. AMILU S. MARTIN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 32146-86, 22961-88.[1]  Filed June 27, 2000.


Patricia Tucker, for petitioner.

Pamelya P. Herndon, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined deficiencies and additions to tax in these consolidated cases as follows:

_____

[1]  These cases were consolidated for trial, briefing, and opinion.

Alfred J. Martin, Jr. and Amilu S. Rothhammer, Docket No. 22961-88

|       |            | Addition to tax Sec. 6659 |
|-------|------------|---------------------------|
| Year  | Deficiency | Sec. 6659                 |
| 1980  | $56,771    | $16,085                   |

Alfred J. Martin, Docket No. 32146-86

|      |            | Additions to tax | |
|------|------------|-----------|---------------|
| Year | Deficiency | Sec. 6651 | Sec. 6653(a)(1) |
| 1981 | $14,827    | $81       | $1,067        |
| 1982 | 298        |           | 15            |

After concessions, the issues for decision are:

1.  Whether petitioner[2] authorized his name to be included on a petition filed in this Court (docket No. 22961-88) for tax year 1980.  We hold that he did not, and thus, we will dismiss petitioner from that case.[3]

2.  Whether petitioner is liable for the addition to tax for failure to timely file his 1981 return under section 6651(a).  We hold that he is.

3.  Whether petitioner is liable for the addition to tax for negligence for 1981 and 1982 under section 6653(a)(1).  We hold that he is.

---

[2]  References to petitioner are to Alfred J. Martin.  Section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

[3]  Consequently, we lack jurisdiction to decide whether the time for respondent to assess petitioner's 1980 tax liability has passed.

## FINDINGS OF FACT

Some of the facts are stipulated and are so found.

A.   Petitioners

Petitioner lived in Suffolk, Virginia, on August 4, 1986, when the petition for tax years 1981 and 1982 (docket No. 32146-86) was filed.  When the petition was filed for tax year 1980 in docket No. 22961-88, on September 6, 1988, petitioner lived in Suffolk, Virginia, and petitioner Amilu S. Rothhammer (Rothhammer), formerly Amilu S. Martin, lived in Colorado Springs, Colorado.

Petitioners are both medical doctors.  In 1980, petitioner and Rothhammer were married to each other and were practicing medicine in Colorado Springs, Colorado.  Steven Covalt (Covalt), a certified public accountant, prepared their joint 1980 Federal income tax return.  Covalt was petitioner's and Rothhammer's accountant from 1972 until 1981 and was petitioner's accountant until 1986.  On November 1, 1981, petitioner signed a Form 2848, Power of Attorney, in which he authorized Covalt to represent him before the Internal Revenue Service (IRS).

Petitioner and Rothhammer were divorced in 1981 and have not had any direct contact with each other since then.  Any indirect contact between them has been through counsel.  In the divorce settlement, petitioner and Rothhammer agreed to share equally any income tax liability for 1980.

In June 1982, petitioner reentered the Navy as a captain in

the medical corps.  While in the Navy, he spent about 6 months each year at sea on dates not stated in the record.  At a date not stated in the record, he moved to Rockville, Maryland, and became Chief of Vascular Surgery at Bethesda Naval Hospital.  In 1986 he left active duty and moved to Suffolk, Virginia, where he practiced medicine until 1993.

Petitioner hired Arthur Robb (Robb), a certified public accountant, to prepare his income tax returns, when he moved to Suffolk, Virginia.  Petitioner signed a Form 2848, in which he authorized Robb to represent him before the IRS.  Petitioner never authorized Robb to hire an attorney for him.

In 1993, petitioner moved to Santa Fe, New Mexico, and began a solo practice in general thoracic and vascular surgery.

B.   The Partnerships in Which Petitioner Invested and Counsel for Those Partnerships

Before 1980, 1981, and 1982, petitioner and Rothhammer bought limited partnership interests in Winchester Oil, Synergy Resources, and other partnerships.  Winchester Oil was one of the Manhattan group partnerships (Manhattan).  Manhattan was a group of 20 partnerships which were involved in the Elektra-Hemisphere cases tried by this Court.  The general partners of Manhattan hired the law firm of Zobrist, Vienna & McCullough (Zobrist) to file petitions at the request of any of the limited partners.  Attorneys Michael Matthias (Matthias) and Jeffrey Berg (Berg), and paralegal Bruce Morton (Morton), handled the Manhattan cases

for Zobrist. Matthias and Berg left Zobrist in 1988 to form their own law firm, Matthias & Berg. Matthias became lead counsel in the test case for the Manhattan group around 1986. Zobrist, and later Matthias & Berg, represented more than 4,000 limited partners. Zobrist and Matthias & Berg filed several petitions for most of the limited partners that they represented. The two firms filed more than 14,000 petitions for limited partners.

The following typically occurred when Matthias & Berg prepared petitions for Manhattan limited partners: (1) The firm received a letter with a copy of a notice of deficiency from the limited partner, or an accountant or other attorney; (2) the paralegals prepared petitions on behalf of anyone named in the notice of deficiency; (3) Matthias or Berg reviewed and signed the petition; (4) the paralegals sent a transmittal letter to the limited partner with a copy of the petition; (5) the paralegals placed copies of any correspondence in the client's case file; and (6) the limited partner paid the firm a $120 fee for each petition filed.

C. The Notices of Deficiency and Petitions in These Cases

1. Tax Years 1981 and 1982 (Docket No. 32146-86)

Petitioner filed his income tax return for 1981 on December 31, 1982, and for 1982 on January 2, 1984. Respondent mailed a notice of deficiency for tax years 1981 and 1982 to petitioner on May 15, 1986, at 1 Lily Pond Court, Rockville, Maryland, his last

known address.  Petitioner received the notice of deficiency.  He wrote a letter to Zobrist on May 20, 1986, in which he said that he was a limited partner in Winchester Oil and asked for advice. Petitioner attached a copy of the 1986 notice of deficiency to that letter.  On July 25, 1986, Zobrist sent a letter to petitioner and Rothhammer informing them that a petition had been mailed on their behalf and enclosing a copy.  The petition was filed on August 4, 1986, at docket No. 32146-86.

2.   Tax Year 1980 (Docket No. 22961-88)

On June 7, 1988, respondent sent a notice of deficiency for 1980 addressed to both petitioners at P.O. Box 886, Suffolk, Virginia 23434, petitioner's last known address, and to both petitioners at Rothhammer's Colorado Springs address.  The U.S. Post Office returned to respondent the envelope containing the notice that had been sent to Suffolk, Virginia.  The envelope was marked "undeliverable as addressed, no forwarding order on file." Respondent sent to Covalt, and Covalt received, a copy of that notice of deficiency.  On June 20, 1988, Covalt wrote a letter to Zobrist (copy to Rothhammer) stating that respondent had sent a notice of deficiency for 1980 to Rothhammer and petitioner and to ask Zobrist to contact Rothhammer.  Covalt also wrote a letter to Robb (copy to Rothhammer) on June 20, 1988, in which he enclosed a copy of the notice of deficiency for 1980 to ensure that Robb knew that respondent had sent it to petitioner.

On August 29, 1988, Berg signed the petition for taxable

year 1980 (docket No. 22961-88) on behalf of petitioner and Rothhammer.  Matthias and Berg mailed it on August 29, 1988.  It was filed with this Court on September 6, 1988.

On August 29, 1988, Berg wrote to Rothhammer in Colorado to notify her that his firm had filed three petitions on her behalf for 1980, 1981 and 1982.[4]  Berg sent copies of that letter to Covalt and Robb, but not to petitioner.  Berg did not place a copy of this letter in petitioner's file.

Robb spoke to Morton by telephone on August 31, 1988.  On September 12, 1988, Morton sent a letter to Robb with copies of the two petitions filed on petitioner's behalf.  Morton did not send a copy of the letter or the petition to petitioner.

D.   Petitioner's Letters

On May 8, 1996, Berg wrote a letter to petitioner and Rothhammer in which he referred to:  "Re:  Elektra/Hemisphere Tax Court Litigation, Docket No. 22961-88" and asked for instructions on how to proceed with settlement.  Petitioner responded with a letter to Berg on June 2, 1996, in which he also referred to:  "Re:  Elektra/Hemisphere Tax Court Litigation, Docket No. 22961-88".  Petitioner used the docket number that Berg had used without realizing the significance of the fact that he had a second docket number.  In the letter, petitioner thanked Berg for

_____

[4]  There is no explanation in the record of why Berg's letter refers to three petitions for Rothhammer for tax years 1980, 1981, and 1982 when petitioner had two petitions for those years.

representing him, said that he was prepared to pay his half of the income tax liability, and said that Rothhammer was responsible for the remaining half of the tax liability.

On August 2, 1996, Matthias wrote a letter to petitioner and Rothhammer in which he referred to: "Re: Elektra/Hemisphere Tax Court Litigation, Docket No. 22961-88" and sought joint instructions for how to proceed in the Tax Court case. Petitioner responded with a letter to Matthias on August 9, 1996, in which he again referred to docket No. 22961-88 and enclosed a check for $50,000 toward a "good faith settlement." Matthias & Berg forwarded the check to respondent as payment against potential tax liability for 1980. Respondent applied it to petitioner's and Rothhammer's 1980 tax liability. Petitioner used the other docket number on another letter when writing about the same $50,000 payment. Petitioner sent or received nine other letters which referred to docket No. 22961-88. Petitioner believed that he had only one Tax Court case when he wrote these letters.

E.   The Court's Order To Show Cause Hearing

In response to respondent's subpoena and on a date not specified in the record, Matthias searched Matthias & Berg's files to prepare for a hearing on an Order to Show Cause in docket No. 22961-88. He discovered that the firm had two files for petitioner, even though Matthias & Berg usually had one file for each of their clients. They had a third file for Rothhammer.

Matthias & Berg's files do not indicate whether they had sent petitioner any notice that they filed the 1988 petition, or contain a copy of the notice of deficiency for 1980 addressed to petitioner.

Berg filed a motion to withdraw as counsel in docket No. 22961-88 on November 12, 1998. There was an Order to Show Cause hearing on November 17, 1998. Berg's motion to withdraw was granted on November 17, 1998.[5] Petitioner first learned that petitions had been filed for him in two cases during the Order to Show Cause hearing on November 17, 1998. At the hearing, petitioner contended that we lacked jurisdiction because he had not authorized a petition to be filed and asked for a hearing on that issue. On November 17, 1998, petitioner signed a stipulation of settled issues on all issues for docket No. 22961-88 except whether we have jurisdiction as to him.

## OPINION

A.  Whether the Tax Court Lacks Jurisdiction Because Petitioner
     Did Not Authorize or Ratify the Filing of the Petition

Respondent contends that the Tax Court has jurisdiction over petitioner in docket No. 22961-88 because he authorized or ratified the filing of his petition. We disagree.

Berg signed the petition for petitioner and Rothhammer for their 1980 tax year. The appearance of an attorney on behalf of

_____

[5]  Berg's motion to withdraw as counsel in docket No. 32146-86, was filed on Jan. 24, 1989, and granted on Jan. 26, 1989.

a person creates a presumption that the attorney has the authority to represent that person.  See <u>Osborn v. United States Bank</u>, 22 U.S. (9 Wheat.) 738, 830 (1824); <u>Gray v. Commissioner</u>, 73 T.C. 639, 646-647 (1980).  However, petitioner has overcome that presumption.  He testified credibly that he did not authorize Berg or anyone else to prepare, sign, and file a petition for his 1980 tax year, and that he did not authorize Covalt, Robb, or anyone else to retain counsel for him.  There is no evidence that petitioner, Covalt, or Robb authorized Berg or anyone else to sign a petition for petitioner's 1980 tax year.

The paralegals in Berg's law firm prepared petitions for each name that appeared on a notice of deficiency that they received.  We believe that the paralegals in Berg's law firm prepared a petition for petitioner because his name was on the notice of deficiency that they received.  Petitioner did not know about the notice of deficiency for 1980 until the Order to Show Cause hearing.  We conclude that petitioner did not authorize Berg to sign and file the petition for 1980 in docket No. 22961-88.

Respondent points out that petitioner sent and received letters that referred to docket No. 22961-88 and that he appeared at the Order to Show Cause held on November 17, 1998, and settled the merits of that case.  Respondent contends that petitioner ratified the petition in docket No. 22961-88 by this conduct.  We disagree.

Petitioner credibly testified that he did not know that he had two cases pending in this Court until he appeared at the Order to Show Cause hearing. He copied the docket number from the letter he received without knowing that two petitions had been filed in his name. Petitioner used one docket number on a letter that he wrote about his $50,000 payment. He used the other docket number on another letter when writing about the same $50,000 payment. When he appeared at the hearing on the Order to Show Cause in docket No. 22961-88, he contended that we lack jurisdiction over that case. We conclude that he has not ratified the 1980 petition.

Respondent points out that Matthias believed that petitioner knew he was a petitioner in docket No. 22961-88. Matthias based this belief on several letters his firm had received from petitioner that had one or the other docket number, including one thanking Berg for representing petitioner in a letter that referred to docket No. 22961-88. We give Matthias' opinion little weight because he had no personal knowledge about the 1980 petition or the case in docket No. 22961-88. In contrast, petitioner credibly testified that he did not know what the docket numbers meant and he did not pay attention to them.

Respondent contends that petitioner authorized Covalt or Robb to ratify the petition in docket No. 22961-88. We disagree. Petitioner did not authorize them to ratify the filing of the petition, and they did not do so. Covalt mailed a copy of the

notice of deficiency for 1980 to Robb and suggested that they consider filing a petition. On June 20, 1988, Covalt wrote a letter to Zobrist (with a copy to Rothhammer) stating that respondent had sent a notice of deficiency for 1980 to Rothhammer and petitioner and to ask Zobrist to contact Rothhammer. Robb spoke to Morton at Matthias & Berg on August 31, 1988, 2 days after Matthias & Berg mailed the petition.

Respondent points out that petitioner authorized Covalt and Robb to represent him before the IRS. However, neither Covalt nor Robb authorized or ratified the filing of the petition in docket No. 22961-88.

Respondent contends that petitioner authorized the general partners in the Manhattan group to retain Matthias & Berg to file the 1980 petition for petitioner. We disagree. There is no evidence to support that theory, and petitioner credibly testified that he did not authorize anyone to file the 1980 petition for him.

Respondent contends that these cases are like Morgan v. Commissioner, T.C. Memo. 1990-338. We disagree. The taxpayer in Morgan learned about the notice of deficiency and petition after her attorney mailed it but before the petition was filed. The taxpayer took no action to stop or repudiate the filing. Here, petitioner objected to our jurisdiction over docket No. 22961-88 when he first realized that a second petition had been filed.

We conclude that petitioner did not file, authorize anyone

to file, or ratify the filing of a petition for his 1980 tax year. Thus, we lack jurisdiction over petitioner's 1980 tax year. Consequently, we lack jurisdiction to decide whether the time for respondent to assess petitioner's 1980 tax liability has passed.

B.  Whether Petitioner Had Reasonable Cause To File His 1981 Return Late

Petitioner contends that he had reasonable cause to file his 1981 income tax return late because he was at sea for up to 6 months in 1982 and he lived in Maryland rather than Colorado where the Synergy Resources project was based. We disagree.

A taxpayer is liable for an addition to tax of up to 25 percent for failure to timely file Federal income tax returns unless the taxpayer shows that such failure was due to reasonable cause and not willful neglect. See sec. 6651(a)(1). To prove reasonable cause, a taxpayer must show that he or she exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. See Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioner reentered the Navy in June 1982. He has not shown that being at sea or living in Maryland prevented him from timely filing his 1981 return. We conclude that petitioner has not shown that he had reasonable cause to file his 1981 return late.

C.   <u>Whether Petitioner Is Liable for the Addition to Tax for Negligence in 1981 and 1982</u>

Respondent determined and contends that petitioner is liable for the addition to tax for negligence under section 6653(a)(1) for 1981 and 1982.  Petitioner did not dispute respondent's contention at trial or on brief even though petitioner bears the burden of proof on this issue.  See Rule 142(a).  We treat petitioner's failure to dispute respondent's contention as his concession that respondent's determination is correct.  See <u>Bradley v. Commissioner</u>, 100 T.C. 367, 370 (1993); <u>Stringer v. Commissioner</u>, 84 T.C. 693, 706 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986); <u>Bernstein v. Commissioner</u>, 22 T.C. 1146, 1152 (1954), affd. per curiam 230 F.2d 603 (2d Cir.

1956); <u>Lime Cola Co. v. Commissioner</u>, 22 T.C. 593, 606 (1954).

To reflect concessions and the foregoing,

<u>An appropriate order
will be issued granting
petitioner Alfred J. Martin's
motion to dismiss as to him
in docket No. 22961-88 for
lack of jurisdiction, decision
will be entered in docket No.
22961-88 as to petitioner
Amilu S. Rothhammer, f.k.a
Amilu S. Martin, under Rule
155, and decision will be
entered in docket No. 32146-86
under Rule 155</u>.