**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

ALFRED J. MARTIN,

       Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

       Respondent - Appellee.

No. 04-9003

---

**Appeal from the United States Tax Court**
**(T.C. No. 13419-02L)**

---

Patricia Tucker, Law Office of Patricia Tucker PC, Albuquerque, New Mexico,
for Petitioner-Appellant.

Patricia M. Bowman, United States Department of Justice, Washington, D.C.
(Eileen J. O'Connor and Richard Farber, United States Department of Justice,
Washington, D.C., with her on the brief), for Respondent-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, Circuit Judge, and **EBEL**,
Circuit Judge.

---

**EBEL**, Circuit Judge.

---

This is an appeal from a decision of the United States Tax Court permitting the Internal Revenue Service ("IRS") to levy the property of Petitioner-Appellant Alfred Martin. For the reasons discussed below, we AFFIRM the judgment of the tax court. We hold that the filing of a petition for redetermination suspends the running of the statute of limitations for the IRS to assess a taxpayer's income tax, even when the petition is not authorized by the taxpayer and includes only the notice of deficiency that the IRS mailed to the ex-spouse with whom the taxpayer filed a joint return for the tax year in question.

## BACKGROUND[1]

### I. The Manhattan Group Partnerships

Before 1980, Martin and his then-wife Amilu became limited partners in Winchester Oil, one of a group of twenty tax shelters known as the Manhattan Group Partnerships. The IRS disallowed the losses claimed by the limited partners of these partnerships. See Krause v. Comm'r, 99 T.C. 132, 134 (1992), aff'd sub nom. Hildebrand v. Comm'r, 28 F.3d 1024, 1026 (10th Cir. 1994).

With approximately 2,000 related cases involving alleged tax deficiencies of $2 billion at stake, representatives of the partnerships and the IRS litigated a test case—known as the Elektra/Hemisphere tax litigation—in the tax court. See

[1] The facts in this case are not in dispute, as the parties submitted the case to the tax court fully stipulated.

Krause, 99 T.C. at 133. The tax court disallowed the losses resulting from investments in the limited partnerships, imposed an increased interest rate on tax underpayments attributable to tax-motivated transactions, and disallowed certain interest deductions. See Hildebrand, 28 F.3d at 1026 (detailing the tax court's holding in Krause, 99 T.C. at 132). We affirmed the judgment of the tax court, see id., and the Supreme Court denied the taxpayers' petition for a writ of certiorari. Krause v. Comm'r, 513 U.S. 1078 (1995); Hildebrand v. Comm'r, 513 U.S. 1079 (1995).

While the test case was pending, the general partners of the Manhattan Group Partnerships hired a law firm to file petitions with the tax court on behalf of any of the limited partners interested in redetermining their tax liability. One of the lawyers who handled these cases was Jeffrey Berg.[2]

## II.    The Notices of Deficiency and Petitions

Before they divorced in 1981, Martin and Amilu filed a joint federal income tax return for 1980. The IRS conducted an examination of this return. During the examination, Martin signed a form extending the time during which the IRS could assess his 1980 taxes. The form stated that if the IRS were to mail a notice of deficiency to Martin, the time for the IRS to assess his 1980 taxes

---

[2] In this opinion, we refer to the law firm hired by the general partners of the Manhattan Group Partnerships, and a successor firm that handled the same work, as "the law firm."

- 3 -

would not end until sixty days after any period during which making an assessment would be otherwise prohibited (i.e., as discussed below, if Martin were to file a petition in response to the notice, then the time for the IRS to assess the tax would end sixty days after the tax court's resolution of the resulting case).

Before completing the 1980 examination, the IRS mailed a notice of deficiency for 1981 and 1982 to Martin in May 1986. Martin received the notice of deficiency and wrote to the law firm, attaching a copy of the 1981/1982 notice of deficiency. In July 1986, the law firm sent a letter to Martin and Amilu informing them that a petition had been filed on their behalf.[3] The petition, which was given docket number 32146-86, sought a redetermination of Martin's 1981 and 1982 income tax deficiencies.

At the conclusion of its examination of Martin and Amilu's 1980 return, the IRS determined a deficiency of $56,771. In June 1988, the IRS issued notices of deficiency to Martin at his last known address, which was in Virginia, and to Amilu at her address in Colorado. The document sent to Amilu was addressed to her and referenced in the address line the "Joint Return of . . . Mr. Alfred J. Martin, Jr. and Mrs. Amilu S. Martin." The document sent to Martin was addressed to him, with the same reference in the address line. The document sent to Martin was returned by the Postal Service as undeliverable.

---

[3] Amilu was subsequently dismissed from the case for lack of jurisdiction.

In June 1988, Steven Covalt—a certified public accountant ("CPA") who had prepared the 1980 return for Martin and Amilu and whom Martin had authorized as his representative before the IRS—wrote a letter to the law firm stating that the IRS had sent a Notice of Deficiency for 1980 to Martin and Amilu. Covalt also wrote a letter to Arthur Robb, a CPA whom Martin had retained as his accountant when he moved to Virginia, in which Covalt enclosed a copy of the 1980 Notice of Deficiency to ensure that Robb knew that the IRS had sent it to Martin.

In August 1988, attorney Berg filed a petition on behalf of both Martin and Amilu seeking a redetermination of their 1980 tax liability. Berg attached to the petition a copy of the notice of deficiency that the IRS had sent to Amilu, but not a copy of the notice of deficiency that the IRS had sent to Martin. The petition was given docket number 22961-88. In September 1988, the law firm sent a letter to Robb with copies of the two petitions filed on Martin's behalf. The law firm did not send a copy of the letter to Martin.

In May 1996, Berg wrote to Martin and Amilu asking for instructions on how to proceed with settlement in the "Elektra/Hemisphere Tax Court Litigation, Docket No. 22961-88." Docket number 22961-88 involved the 1980 petition. In his response to the letter, Martin referred to the same docket number, stated that

he was prepared to pay his half of the income tax liability, and said that Amilu was responsible for the remaining half of the tax liability.

In August 1996, Berg's law firm partner wrote to Martin and Amilu, again asking for joint instructions on how to proceed in the tax court case with docket number 22961-88. In his response, Martin also referenced docket number 22961-88, and enclosed a check for $50,000 toward a good faith settlement. The law firm forwarded Martin's check to the IRS as payment against potential tax liability for 1980. However, in a subsequent letter to the law firm about the same $50,000 payment, Martin used docket number 32146-86, which was the docket number related to his 1981/1982 petition. Nevertheless, Martin later sent or received nine other letters that referred to docket number 22961-88.

In 1999, Martin filed a motion in tax court seeking to dismiss the proceeding resulting from the 1980 petition, contending that the tax court lacked jurisdiction over him because he had not filed or ratified the petition. The tax court concluded that Martin did not file, authorize, or ratify the filing of the 1980 petition, and granted Martin's request to be dismissed from the case arising from the 1980 petition. See Martin v. Comm'r, 79 T.C.M. (CCH) 2153, at *15, *17 (2000), aff'd 38 F. App'x 980 (4th Cir. 2002) (unpublished) (per curiam).

III. The Proceedings Below

Although the tax court dismissed Martin from the case challenging the amount of Martin and Amilu's 1980 tax liability, that amount remained outstanding, and the IRS began the process of collecting it. In November 2000, the IRS assessed income tax of $56,771 and interest of approximately $456,023 against Martin based on his 1980 tax liability. After adjusting for payments and credits of approximately $140,945, the IRS sent Martin a notice of balance due totaling $371,849.

One year later, in November 2001, the IRS issued a final notice to Martin, alerting him of the IRS's intent to levy. Martin timely requested a pre-levy hearing. After the hearing, the IRS's appeals office concluded that the IRS had met all legal and procedural requirements for issuing a notice of intent to levy. Thus, the appeals office concluded that the statute of limitations had not expired prior to the IRS's assessment of Martin's 1980 income tax liability.

In August 2002, Martin timely appealed the determination of the IRS's appeals office to the tax court. Martin argued that the 1980 petition was insufficient to suspend the running of the statute of limitations because Martin did not authorize or ratify the filing of the petition, and that the petition was defective because it did not attach a copy of the notice of deficiency that had been sent to Martin at his Virginia address.

The tax court ruled in favor of the IRS, concluding that although Martin did not authorize the 1980 petition and Martin's copy of the notice of deficiency was not attached, the petition placed a "proceeding in respect of the deficiency" on the tax court's docket and therefore suspended the running of the statute of limitations for assessment. The tax court denied Martin's motion for reconsideration and motion to vacate. This appeal followed.

## DISCUSSION

The tax court had jurisdiction over this dispute pursuant to 26 U.S.C. § 6330(d). We have jurisdiction over Martin's appeal from the tax court's decision. See 26 U.S.C. § 7482(a); Fed. R. App. P. 13(a). We review the tax court's factual findings for clear error and its rulings of law de novo. See Anderson v. Comm'r, 62 F.3d 1266, 1270 (10th Cir. 1995).

### I. The Impact of Filing an Unauthorized Petition

As discussed below, we conclude that the statute of limitations for the IRS to assess Martin's 1980 income tax was suspended when Berg filed a petition for a redetermination of Martin's 1980 tax liability, even though Martin did not authorize Berg to file such a petition. Thus, the IRS's assessment of tax against Martin was timely, and the IRS therefore may levy Martin's property to collect the assessed tax.

#### A. Legal Framework

Title 26, United States Code § 6501 generally requires that the IRS assess an income tax deficiency within three years after a taxpayer files a return. See 26 U.S.C. § 6501(a). Before assessing an income tax deficiency, the IRS must first issue a notice of deficiency and allow a taxpayer ninety days to file a tax court petition. See id. § 6212(a); id. § 6213(a). After such a petition has been filed with the tax court, the IRS may not assess income tax against the taxpayer until the tax court's decision has become final. See id. § 6213(a).

The IRS's mailing of a notice of deficiency to a taxpayer suspends the running of the statute of limitations for assessment "for the period during which the Secretary is prohibited from making the assessment . . . (*and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final*), *and for 60 days thereafter*." Id. § 6503(a)(1) (emphasis added). Thus, the plain text of § 6503(a)(1) provides that placing a proceeding in respect of a deficiency on the docket of the tax court suspends the running of the statute of limitations. The text does not suggest that a petition must be authorized or ratified by a taxpayer to have such an effect. The statute's use of the phrase "in *any* event" in its discussion of the placement of a proceeding on the tax court's docket buttresses this reading of § 6503, making clear that the running of the statute of limitations will be suspended no matter the

nature of the events leading to the placement of a proceeding on the docket of the tax court.  Id. (emphasis added).

Section 6213 also buttresses this reading of § 6503.  The IRS is barred by the plain text of § 6213 from assessing a deficiency after a petition "has been filed with the Tax Court."  Id. § 6213(a).  If the statute of limitations were to continue to run after the filing of a petition with the tax court that resulted in the placement of a proceeding on the court's docket, in some instances the IRS would be forced to stand idly by during the course of litigation while the statute of limitations for assessment expired.  There is no authority indicating that Congress intended such an extreme result.

The legislative history of § 6503(a)(1) sheds further light on the meaning of the circumstances in which the running of the statute of limitations may be suspended.  The predecessor to § 6503(a)(1), § 277 of the Internal Revenue Code of 1939, was first enacted as § 277 of the Revenue Act of 1928, ch. 852, 45 Stat. 791, 857.  The legislative history of § 277 of the Revenue Act of 1928 addresses the impact that a defective petition may have on the limitations period:

> [U]nder the provisions of the bill, the running of the limitation period on assessments is suspended while an appeal is pending before the Board [of Tax Appeals, the predecessor to the tax court].  Subsequently the Board may dismiss the appeal on the ground that the petition was not filed within the 60-day period or, for example, because the paper filed within the period was not sufficient to constitute a petition.  The decision dismissing the appeal may not be made until months after the proceeding was begun and there is some

> question whether in such cases the statute of limitations on assessment is actually suspended during the pendency of the proceeding. It is specifically provided in section 277 that the limitations period shall be suspended, if any proceeding is placed on the docket of the Board, until the decision of the Board in respect thereof becomes final and for 60 days thereafter.

H.R. Rep. 2, 70th Cong., 1st Sess. (1927), 1939-1 C.B. (Part 2) 384, 399-400; see also S. Rep. 960, 70th Cong., 1st Sess. (1928), 1939-1 C.B. (Part 2) 409, 431 (same).

While we have not yet addressed the issue, a number of courts have held that the filing of a tax court petition suspends the running of the statute of limitations for assessment—even when the petition is defective and is subsequently dismissed for lack of jurisdiction. In American Equitable Assurance Co. v. Helvering, 68 F.2d 46 (2d Cir. 1933), the Second Circuit addressed a situation in which the Board of Tax Appeals had dismissed a petition for redetermination for lack of jurisdiction because the petition was not filed by the taxpayer company, but rather by a successor purchaser of the taxpayer's United States assets.[4] Id. at 46-47. The IRS subsequently assessed the tax liability of the taxpayer, and the successor purchaser—which had assumed the tax liability of the taxpayer as part of the purchase of the taxpayer's U.S. assets—challenged the

---

[4] American Equitable Assurance Co. was decided under § 277 of the Revenue Act of 1928. See 68 F.2d at 47. As stated above, § 277 of the Revenue Act of 1928 is the predecessor to 26 U.S.C. § 6503. Thus, the analysis in American Equitable Assurance Co. is applicable in the case at bar.

assessment as untimely, arguing that the petition that it had earlier filed did not properly place a proceeding on the docket of the tax court for purposes of suspending the statute of limitations. Id. The Second Circuit rejected this argument, stating that "the mere placing on the docket of the Board of a proceeding in respect to the deficiency" suspends the limitations period. Id. at 47. The court continued:

> Even though the Board dismissed this proceeding . . . for want of jurisdiction . . . , the placing of the proceeding upon its docket gave it whatever right to act is involved in determining whether or not the petition was sufficient to give it jurisdiction to decide the matter on the merits. At any rate, a proceeding had been commenced which required the Board of Tax Appeals to make a decision though not necessarily on the merits. Because the effect of the passage of time would be the same whether the Board made its decision on the merits or on some other ground, if the period stated in the statute of limitations meantime expired, it is reasonable to believe that Congress did not intend to have the time a proceeding was pending before the Board counted any more when the decision was a dismissal for want of jurisdiction than when it was not.

Id.

The Ninth Circuit recently reaffirmed the reasoning of American Equitable Assurance Co. See O'Neill v. United States, 44 F.3d 803, 805 (9th Cir. 1995) ("We agree with the reasoning of the Second Circuit in American Equitable Assurance Co. . . . ."). In O'Neill, the Ninth Circuit held that a petition filed by the tax matters partner of a partnership suspended the statute of limitations for assessment of a final partnership administrative adjustment until the decision of

the tax court was final. Id. at 805-06. The Ninth Circuit held as much even though the stipulated tax court decision that resulted from the tax matters partner's petition was vacated because the partner had declared personal bankruptcy before the time that he filed the petition, and the tax court therefore did not have jurisdiction over the case resulting from the petition. Id. The Ninth Circuit adopted the position that the limitation period was suspended once a proceeding was placed on the docket, even if the petition was later found to be defective because "[o]therwise the Commissioner could risk being completely barred from assessing a properly-owed tax." Id. at 806. The Ninth Circuit summarized its opinion as follows:

> We conclude that [the tax matters partner's] petition, although later dismissed as defective, served to suspend the limitation period because there was an existing unresolved matter before the Tax Court. Therefore, the Commissioner could not have brought an assessment until the decision of the Tax Court was final . . . . Once the Tax Court decision was final, whether on jurisdictional grounds or on the merits, the limitation period began running again. Because the Commissioner assessed the tax within the applicable limitation period, the assessment was not time-barred.

Id. at 806.

In United States v. Shahadi, 340 F.2d 56 (3d Cir. 1965), the Third Circuit concluded that the limitations period is suspended during a tax court proceeding even when the IRS is not prohibited from collecting the tax during the pendency

- 13 -

of the tax court proceeding.[5]  Id. at 58-59.  Rejecting the taxpayer's argument that the statute of limitations is tolled "only as long as 'the Commissioner's hands are tied,'" the Third Circuit noted that

> the very language of § 277 refutes the argument.  For the clause suspending the statute during the period the Commissioner is barred from action is immediately followed by the parenthetical clause "(and in any event, etc.)."  Taxpayer's reading of the statute is persuasive only if the parenthetical [sic] clause is regarded as a nullity.

Id. at 58.  After analyzing the legislative history of § 277 of the Internal Revenue Code of 1939, the Third Circuit concluded that its decision was supported by other cases holding that the statute of limitations is tolled "when matters are being litigated in the Tax Court under any circumstances."  Id. at 59 (citing cases).

Finally, in Eversole v. Commissioner, 46 T.C. 56 (1966), the transferees of an estate contended that a defective petition, which had been filed by an improper party on the estate's behalf[6] and which the tax court had therefore dismissed as to

_____

[5] If the IRS believes that the collection of a tax deficiency is in jeopardy due to delay, the IRS may assess and collect the tax immediately and without the usual formalities.  See 26 U.S.C. §§ 6861 et seq.  In Shahadi, collections were not prohibited because the IRS had made a jeopardy assessment under § 273 of the Internal Revenue Code of 1939, the predecessor to 26 U.S.C. § 6861.  See 340 F.2d at 56.  The case addressed the suspension of the running of the statute of limitations under § 277 of the Internal Revenue Code of 1939, the predecessor to 26 U.S.C. § 6503.  See id.  Thus, the analysis in Shahadi is applicable in the case at bar.

[6] A widow who had served as the administrator of her husband's estate

(continued...)

the estate, failed to suspend the running of the statute of limitations.[7]  Id. at 57-59.  Relying on the legislative history of § 277 of the Internal Revenue Code of 1939, the tax court held that the petition suspended the limitations period.  Id. at 63-65.  The court found significant that the language of § 277 required the limitations period to be suspended when a proceeding "is placed" on the docket rather than when "the taxpayer places" a proceeding on the docket.  Id. at 64.

## B.    Application

In this case, Martin filed his 1980 federal income tax return on April 15, 1981.  On December 6, 1983, before the expiration of the three-year period for assessment authorized by 26 U.S.C. § 6503, Martin signed an IRS form extending the time to assess tax.  This extension was to last until a short time after one of a number of different events occurred; one such event was the IRS mailing a notice of deficiency.  On June 7, 1988, the IRS mailed a notice of deficiency to Martin at his last known address.  Berg timely filed a petition on Martin's behalf with the tax court on September 6, 1988.  This petition placed on the docket of the tax

---

[6](...continued)
signed the petition in her individual capacity, rather than in her capacity as administrator.  See Eversole, 46 T.C. at 58-59.

[7] Like Shahadi, see 340 F.2d at 56, Eversole addresses § 277 of the Internal Revenue Code of 1939, see 46 T.C. at 63, and Eversole's analysis is similarly applicable in the case at bar.  See supra note 5.

court a proceeding in respect of the deficiency within the meaning of 26 U.S.C. § 6503.

The tax court dismissed the proceeding for lack of jurisdiction on June 27, 2000. This dismissal order became final on September 25, 2000. Because 26 U.S.C. § 6503 states that placing the proceeding on the docket of the tax court suspended the limitations period until the decision of the tax court became final, and for sixty days thereafter, the statute of limitations for assessment was tolled through November 24, 2000—sixty days after September 25, 2000. The IRS assessed Martin's 1980 federal income tax liability on November 20, 2000—four days before the expiration of the statute of limitations. Thus, the IRS's assessment was not barred by the expiration of the statute of limitations.

American Equitable Assurance Co., O'Neill, Shahadi, and Eversole make clear that the fact that the 1980 petition was subsequently dismissed for lack of jurisdiction has no impact on the tolling of the statute of limitations. See Am. Equitable Assurance Co., 68 F.2d at 47; O'Neill, 44 F.3d at 805-06; Shahadi, 340 F.2d at 58-59; Eversole, 46 T.C. at 63-65. Those cases stand for the proposition that the placing of a proceeding on the docket of the tax court, not the manner in which such a proceeding is resolved, is key to tolling the running of the statute of limitations. See id.

Martin's attempt to distinguish Eversole—and, by extension, American Equitable Assurance Co., O'Neill, and Shahadi—is without merit. Martin notes

- 16 -

that in <u>Eversole</u> the improper party was the decedent taxpayer's widow and the former administrator of his estate. Martin argues that in the case at bar, the improper party was an "interloper." Martin ignores the fact that Berg was Martin's counsel in a case involving his 1981 and 1982 deficiencies, and thus was hardly an interloper.[8] More importantly, Martin ignores the fact that the reasoning of <u>Eversole</u>—as well as the reasoning of <u>American Equitable Assurance Co.</u>, <u>O'Neill</u>, and <u>Shahadi</u>—does not suggest that the case can be distinguished on the basis of the relationship of the person who puts the dispute on the tax court's docket to the subject of the proceeding. <u>See, e.g.</u>, <u>Eversole</u>, 46 T.C. at 64 (emphasizing that the running of the statute of limitations is suspended when a proceeding "is placed" on the docket of the tax court, rather than when "the taxpayer places" such a proceeding on the docket).

Martin's reliance on <u>Kirch v. United States</u>, No. C2-97-848, 1999 WL 302454 (S.D. Ohio Mar. 31, 1999) (unpublished), is misplaced. In <u>Kirch</u>, the taxpayers successfully asserted that the petition they filed with the tax court, which the tax court dismissed for lack of jurisdiction, failed to suspend the statute of limitations. 1999 WL 302454, at *1, *6. But in <u>Kirch</u>, unlike the case at bar,

---

[8] We do not hold that Berg's authority to file the 1981/1982 petition also provided him with authority to file the 1980 petition. Rather, we note that with respect to the 1980 petition, Berg fell into the middle ground between being authorized to file the petition and being a mere "interloper."

the taxpayers filed a petition *before* the IRS issued a notice of deficiency. Id. at

*3. According to the Kirch court, none of the provisions for suspending the

running of the statute of limitations in § 6503(a) could be invoked, because the

IRS had not issued a notice of deficiency, and the statute provides for a

suspension only "'*after* the mailing of a notice under Section 6212(a).'" Id. at *3-

*4 (quoting 26 U.S.C. § 6503(a)(1)) (emphasis added). Thus, the Kirch court

concluded that because the IRS had not issued a notice of deficiency, the

taxpayers' filing of a petition with the tax court had not placed a "proceeding in

respect of the deficiency" on the docket. Id. at *4. In this case, by contrast, the

IRS issued a valid notice of deficiency before Berg filed a petition on Martin's

behalf. Although Martin did not authorize Berg to file the petition, the petition

still placed a "proceeding in respect of the deficiency" on the tax court's docket,

and therefore suspended the limitations period.

There was no reason that the IRS should have suspected that something was

amiss with the filing that Berg made on Martin's behalf and refrained from

waiting for the tax court proceedings to conclude before attempting to assess

Martin's tax liability. Tax court rules permit petitions to be signed by either a

taxpayer or the taxpayer's attorney. See Tax Court Rule 23(a)(3) ("The original

signature, either of the party or the party's counsel, shall be subscribed in writing

to the original of every paper filed by or for that party with the Court, except as

- 18 -

otherwise provided by these Rules.").  A strong presumption of authority is afforded to counsel filing a petition in the tax court.  See Tax Court Rule 33 ("The signature of counsel . . . constitutes a representation by counsel that counsel is authorized to represent the party or parties on whose behalf the pleading is filed."); Gray v. Comm'r, 73 T.C. 639, 646 (1980) ("'[T]he presumption is that an attorney at law who appears in regular manner on behalf of a party litigant has authority to do so . . . .'") (quoting Booth v. Fletcher, 101 F.2d 676, 683 (D.C. Cir. 1938)).

Moreover, two years before filing the 1980 petition, Berg had filed an authorized petition on Martin's behalf for tax years 1981 and 1982.  After filing the 1980 petition, Berg sent a $50,000 payment to the IRS for application to that liability.  Berg and his law firm had filed similar petitions for many other taxpayers.[9]  Thus, it would have been reasonable for the IRS to presume that the 1980 petition was valid.

Martin's tax liability for 1980 has grown from approximately $50,000 to over $500,000 as a result of interest and penalties.[10]  Martin argues that for seventeen years he had no reason "to think that anything was amiss or still

_____

[9] The law firm represented more than 4,000 limited partners and filed more than 14,000 petitions on those limited partners' behalf.

[10] Martin's 1980 federal income tax underpayment totaled $56,771.  As of November 2001, when the IRS notified Martin of its intent to levy, interest and penalties brought the amount that Martin owes to $511,650.68.

pending with respect to his 1980 tax liability . . . [and that] a staggering amount of interest continued to accrue against him since 1981, through no fault of his own."

However, the increase in Martin's liability is solely the fault of Martin and his agents. Both of the accountants on whom Martin relied—one of whom prepared Martin's 1980 return and was authorized as Martin's representative before the IRS—received a copy of the 1980 notice of deficiency after it was mailed in 1988. Thus, Martin should have learned about the deficiency in 1988, and his contention that he had no reason for seventeen years to think that anything was amiss is without merit. Moreover, Martin sent a $50,000 payment to the law firm to forward to the IRS for application to his 1980 tax liability. Martin noted in the letter accompanying the payment that it was only a partial payment. See Martin v. Comm'r, 38 F. App'x 980, 985 (4th Cir. 2002) (unpublished) (per curiam). Thus, Martin himself chose to make only a partial payment of his tax liability, thereby allowing interest and penalties to accrue on the unpaid balance.[11]

---

[11] Martin's argument that he thought the $50,000 would be applied to his 1981 and 1982 tax liability is without merit. The Fourth Circuit rejected Martin's argument in an appeal from an earlier tax court decision, see Martin, 38 F. App'x at 985, and we find the Fourth Circuit's analysis persuasive. Martin instructed the law firm that he would not make additional payments until Amilu "'matched that amount.'" Id. at 981. Martin filed a return with Amilu in 1980, but could not have done so in 1981 or 1982, after they were divorced. See 26 U.S.C. § 6013(d)(1)-(2). Martin's reference to the need for Amilu to match his payment

(continued...)

Accordingly, we conclude that the filing of a petition for redetermination suspends the running of the statute of limitations for the IRS to assess a taxpayer's income tax, even when the petition is not authorized or ratified by the taxpayer. Because the statute of limitations for the IRS to assess Martin's 1980 income tax was suspended when Berg filed a petition for a redetermination of Martin's 1980 tax liability, the IRS's assessment of tax against Martin for 1980 was timely, and the IRS therefore may levy Martin's property to collect the assessed tax.

## II. The Impact of Filing a Petition Omitting the Notice of Deficiency Mailed to the Taxpayer

Martin argues that because Berg attached to the 1980 petition only the notice of deficiency that the IRS sent to Amilu, the petition was not filed with respect to Martin's share of the joint deficiency. As a result, Martin argues that the petition failed to suspend the running of the statute of limitations.[12]

_____

[11](...continued)
thus suggests that he knew that he had outstanding tax liability for 1980—the only year from 1980 through 1982 when he filed a return together with Amilu—and that his payment was intended to address that liability, rather than his 1981 or 1982 liability. Moreover, in a letter to Berg accompanying the $50,000 payment, Martin stated that it was for partial payment of a *joint* liability. See Martin, 38 F. App'x at 985. Thus, Martin cannot plausibly contend that the payment related to 1981 or 1982, years in which he was divorced from Amilu and therefore had no joint tax liability with her. See 26 U.S.C. § 6013(d)(1)-(2).

[12] The tax court rejected a similar argument to the one that Martin now advances in a case involving Martin's request for litigation costs. See

(continued...)

- 21 -

Martin's argument fails for a number of reasons. First, Martin's argument is erroneous to the extent that it conflates conferring jurisdiction with the placing of a petition on the docket of the tax court. American Equitable Assurance Co., O'Neill, Shahadi, and Eversole make clear that only the latter is necessary to suspend the running of the statute of limitations for assessment. See American Equitable Assurance Co., 68 F.2d at 47; O'Neill, 44 F.3d at 805-06; Shahadi, 340 F.2d at 58-59; Eversole, 46 T.C. at 63-65. Thus, even if Berg's failure to attach the notice of deficiency mailed to Martin were enough to deprive the tax court of jurisdiction over that petition, it would not follow that the statute of limitations must have continued to run when that defective petition was placed on the tax court's docket.

Second, Berg's failure to attach the notice of deficiency mailed to Martin along with the notice of deficiency mailed to Amilu did not deprive the tax court of jurisdiction over Martin or result in the filing of a case that was not "in respect of" Martin's deficiency. In order for the tax court to exercise jurisdiction over a dispute involving a particular deficiency, the IRS must issue a valid notice of

<hr/>

[12](...continued)
Rothhammer v. Comm'r, 81 T.C.M. (CCH) 1213, at *9-*10 (2001). In the case at bar, the tax court determined that the IRS waived the argument that Martin is collaterally estopped from raising the jurisdictional issue as a result of the tax court's holding in Rothhammer. As the IRS has not challenged this ruling, we express no opinion on it.

deficiency, and a timely petition must be filed on the taxpayer's behalf.  Frieling

v. Comm'r, 81 T.C. 42, 46 (1983).  Tax Court Rule 34(b) lays out the

requirements for a petition to be valid.  The rule provides that a petition shall

contain "[a] copy of the notice of deficiency . . . which shall be appended to the

petition."  Tax Court Rule 34(b)(8).  In this case, the 1980 petition contained a

copy of the notice describing the deficiency in the "Joint Return of . . . Mr. Alfred

J. Martin, Jr. and Mrs. Amilu S. Martin."  Thus, the 1980 petition complied with

the portion of Tax Court Rule 34(b) mandating that the notice of deficiency be

appended to a tax court petition.

Martin argues that the joint 1980 tax return that he filed with Amilu gave

rise to two separate deficiencies—one for himself, and one for Amilu—and

suggests that a separate notice of deficiency must be attached for each taxpayer

involved in a case addressing a deficiency in a joint return.  This argument is

unpersuasive.  In the cases that Martin cites in support of his argument, the

petitioners moved—after the ninety-day period for filing a petition expired—to

amend their petitions to contest deficiencies for taxpayers or tax years omitted

from the original petitions.  See Normac, Inc. v. Comm'r, 90 T.C. 142, 149

(1988); O'Neil v. Comm'r, 66 T.C. 105, 107-08 (1976); Estate of DuPuy v.

Comm'r, 48 T.C. 918, 919-20 (1967).  The tax court held in each case that it

could not exercise jurisdiction over these new, separate deficiencies because they

had not been described in the original petition. In this case, by contrast, because Martin and Amilu were jointly and severally liable for the 1980 deficiency, see 26 U.S.C. § 6013(d)(3), the description of the deficiency contained in the notice attached to the 1980 petition was sufficient to identify Martin's deficiency as soon as the original petition was filed. Because the petition itself stated that Martin contested the deficiency that arose in connection with his 1980 income tax return, see Rothhammer, 81 T.C.M. (CCH) 1213, at *9-*10,[13] and the notice of deficiency attached to the petition confirmed the year and amount of that deficiency, the tax court's jurisdiction over Martin was not improper based on a failure to specify his deficiency in the petition—even though jurisdiction over Martin later proved to be improper for other reasons, see Martin, 79 T.C.M. (CCH) 2153, at *15, *17. Cf. InverWorld, 98 T.C. at 86, aff'd 979 F.2d at 868.

---

[13] Martin failed to include a copy of the 1980 petition in the record. Accordingly, we draw our knowledge of the contents of that petition from the tax court's description of the petition in Rothhammer.

The tax court's opinion in the case at bar buttresses our conclusion as to the contents of the 1980 petition. The tax court noted that the 1980 "petition clearly conformed to all three requirements" in InverWorld, Ltd. v. Commissioner, 98 T.C. 70, 86, aff'd 979 F.2d 868, 869 (D.C. Cir. 1992), and the parties do not contest that conclusion. Inverworld states that for a document filed with the tax court to serve as a petition, the document must contain (1) the amount of the deficiencies determined against the taxpayer; (2) the amount the taxpayer is contesting; and (3) the years in dispute. Id. at 86. Thus, by stating that the 1980 petition met the Inverworld requirements, the tax court made clear that in the petition Martin contested the deficiency that arose in connection with the 1980 income tax return.

Thus, Berg's failure to attach a copy of the notice of deficiency that the IRS had mailed to Martin to the petition that Berg filed on Martin's behalf did not deprive the tax court of jurisdiction over the proceeding resulting from the petition or mark the proceeding as one that was not "in respect of" Martin's 1980 deficiency. However, even if the failure to attach the notice of deficiency to the petition had rendered the petition defective and deprived the tax court of jurisdiction over the proceeding resulting from the petition, that result would not have impacted the tolling of the statute of limitations for assessment, for merely placing a proceeding on the docket is sufficient to suspend the running of the statute of limitations. Accordingly, the IRS's assessment was not barred by the statute of limitations, and the IRS's attempt to levy Martin's property was therefore proper.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the tax court.