T.C. Memo. 2013-63

UNITED STATES TAX COURT

MICHAEL J. KEHOE AND KAREN D. KEHOE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1230-09L.                     Filed February 28, 2013.

Michael J. Kehoe and Karen D. Kehoe, pro se.

Bryan Sladek, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  This case is before the Court on a petition for review of a

Notice of Determination Concerning Collection Action(s) Under Section 6320

- 2 -

**[\*2]** and/or 6330 (notice of determination).  <u>See</u> sec. 6330(d).[1]  Petitioners seek

judicial review of respondent's determination to sustain a notice of Federal tax lien

(NFTL).  This collection action concerns petitioners' outstanding Federal income

tax liability for taxable year 2005.  The sole issue for decision is whether

respondent's determination to sustain the filing of the lien constituted an abuse of

discretion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the exhibits received in evidence are incorporated herein by this reference.

Petitioners resided in Michigan when this petition was filed.

Petitioners timely filed their Federal income tax return for tax year 2005

showing tax due of $35,495.  Petitioners made a partial payment of $2,000 along

with Federal withholding of $2,544 but were unable to pay the balance.[2]  On

November 6, 2006, respondent assessed the remaining tax due from

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

[2]During the year at issue petitioners incurred significant expenses in connection with an ongoing family crisis.  Petitioners self-reported the correct amount of tax for each year but simply could not afford to pay the tax in a timely manner.  It is clear from the record that it was not petitioners' intention to avoid tax during the year at issue, but rather that they overspent their available income by giving their family obligations priority over their tax obligations.

[*3] petitioners for tax year 2005. On July 9, 2007, petitioners submitted another payment of $6,000 toward their outstanding balance for tax year 2005. On October 26, 2007, respondent sent to petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (lien notice) concerning petitioners' 2005 tax liability.[3] The lien notice informed petitioners that respondent had filed a notice of lien on their property and that they could request a collection due process (CDP) hearing to contest the lien filing as well as offer collection alternatives. Petitioners sent respondent a timely CDP hearing request on December 12, 2007, in which they did not contest their underlying liability but instead argued that they should have had an opportunity to discuss collection alternatives before the filing of the lien. Petitioners then requested an opportunity to negotiate a collection alternative for the balance due that would operate without the burden of a tax lien.

In the wake of the NFTL filing, petitioners encountered numerous financial hardships. Petitioners' existing $41,000 line of credit with American Express was canceled. In addition, petitioners' limit on an existing line of credit with Bank of

---

[3]At that time the lien notice reflected a remaining balance due of $28,657.19 for tax year 2005.

[*4] America was reduced by $10,000 and petitioners' interest rates for various credit cards rose to untenable levels.

On March 6, 2008, petitioner Michael Kehoe had a telephone CDP hearing with Settlement Officer Alois Hoog (SO Hoog). SO Hoog advised Mr. Kehoe that all legal requirements had been met and that the lien was properly filed. Mr. Kehoe detailed various hardships that the lien had caused him and his wife since its filing, including: (1) that it caused them to lose $51,000 worth of existing credit that they were going to use to help resolve the balance owed; (2) that it caused the issuing banks to substantially reduce spending limits and increase interest rates on their various credit cards; (3) that it caused a precipitous drop in each of their credit ratings; and (4) that it had an overall negative impact on their financial stability and ability to pay the balance owed.

SO Hoog discussed various options available to petitioners, including an effective tax administration (ETA) offer-in-compromise and an installment agreement. Mr. Kehoe believed that he and his wife might qualify for an ETA offer-in-compromise, and SO Hoog agreed to review the financial information

**[*5]** petitioners provided. During that time petitioners continued to make periodic payments toward their outstanding liability when they could afford to do so.[4]

Petitioners filed an ETA offer-in-compromise for $5,000 but soon after amended the offer to $30,000. After analyzing petitioners' financial information, SO Hoog concluded that petitioners were not eligible for an ETA offer-in-compromise because they had sufficient income and assets to pay the liability in full. SO Hoog then communicated to petitioners that while he could not accept the offer-in-compromise they had submitted, he would accept an installment agreement that provided for payments of $300 per month until February 2011, at which time Mr. Kehoe would pay the remaining balance from his IRA.[5] SO Hoog further informed petitioners that he would not withdraw the NFTL for tax year 2005 and that, pursuant to the proposed installment agreement, a second NFTL would be filed for tax year 2006.[6]

---

[4]The transcripts show that petitioners made two payments in May 2008 for $150 and $1,000. In addition, a $1,200 credit on petitioners' account from their 2007 return was applied to the 2005 balance.

[5]In February 2011 Mr. Kehoe would reach the age of 59-1/2, rendering him eligible to make withdrawals from his IRA without penalty under sec. 72(t).

[6]Petitioners also had self-reported Federal income tax due for tax year 2006. Petitioners have timely filed their Federal income tax returns and paid the amounts due for all subsequent tax years through the date of trial.

**[\*6]**   In a letter dated November 14, 2008, petitioners voiced their concerns with the proposed installment agreement.  Petitioners indicated that they would be willing to enter into the proposed installment agreement but only if the NFTL for tax year 2005 was withdrawn and no NFTL was filed for tax year 2006.  Petitioners indicated that they believed that SO Hoog should withdraw the NFTL for tax year 2005 pursuant to section 6323(j)(1)(B) because petitioners were entering into an installment agreement that would satisfy the outstanding liability.  Petitioners went on to reiterate many of the hardships that the filing of the NFTL had caused them and plead for an efficient resolution.  Petitioners stated that they were addressing these concerns in writing because by signing the installment agreement, as written, they would be agreeing to the NFTLs for both 2005 and 2006 and they wanted to memorialize their objections to doing so.

On November 25, 2008, Mr. Kehoe called SO Hoog and advised him that petitioners had decided to withdraw their outstanding offer-in-compromise and sign the installment agreement, but they wanted a notice of determination issued so that they could reserve the right to dispute his decision not to withdraw the lien. SO Hoog mailed to petitioners a copy of the installment agreement for them to sign.

**[*7]**   On December 1, 2008, SO Hoog received the installment agreement signed by both petitioners, as well as a withdrawal of the outstanding offer-in-compromise. However, where a box on the installment agreement had been marked to indicate that a subsequent lien would be filed for tax year 2006, petitioners had applied opaque white correction fluid to the check mark in an apparent attempt to modify the agreement.  As a result of this modification, SO Hoog rejected the installment agreement and sustained the NFTL for tax year 2005.  On December 15, 2008, the Office of Appeals issued to petitioners a notice of determination.  Petitioners timely filed a petition with this Court.

OPINION

Under section 6321, if a person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States upon all property, whether real or personal, belonging to such person.  Under section 6323, the Commissioner may file a notice of the lien that arises under section 6321.  The purpose of such a filing is to protect the Government's interest in a taxpayer's property against the claims of other creditors.  Hughes v. Commissioner, T.C. Memo. 2011-294; Berkery v. Commissioner, T.C. Memo. 2011-57.  Once filed in accordance with the requirements of section 6323(f), an NFTL validates the Government's lien against a subsequent purchaser, holder of a

[*8] security interest, mechanic's lienor, or judgment lien creditor. See sec.

6323(a); Stein v. Commissioner, T.C. Memo. 2004-124; Lindsay v. Commissioner,

T.C. Memo. 2001-285, aff'd, 56 Fed. Appx. 800 (9th Cir. 2003).

I.  Standard of Review

Where the validity of the underlying tax liability is properly at issue, the

Court will review the matter de novo. Davis v. Commissioner, 115 T.C. 35, 39

(2000). Where the underlying tax liability is not properly at issue, the Court will

review the Commissioner's administrative determination for abuse of discretion.

Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C.

176, 181-182 (2000). An abuse of discretion is any action that is arbitrary,

capricious, or without sound basis in law or fact. Woodral v. Commissioner, 112

T.C. 19, 23 (1999).

Petitioners do not challenge their underlying liability for tax year 2005. The

only issue petitioners raise is whether respondent abused his discretion in sustaining

the NFTL. Accordingly, the underlying liability is not properly at issue in this case

and the applicable standard of review is abuse of discretion.

II.  Abuse of Discretion Standard

If the Commissioner chooses to file an NFTL, section 6320 requires him to

give the taxpayer notice of that filing and notice of the right to an administrative

**[*9]** hearing before an impartial officer of the IRS Appeals Office.  Sec. 6320(a) and (b).  At the hearing, the taxpayer may raise appropriate spousal defenses, challenge the appropriateness of the collection action, and offer collection alternatives.  Secs. 6320(c), 6330(c)(2)(A).  In addition to considering the above-stated issues raised by the taxpayer, the Appeals officer must verify that the requirements of applicable law and administrative procedure have been met and consider whether any proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the taxpayer that any collection action should be no more intrusive than necessary.  Sec. 6330(c)(3).

A.  Withdrawal of the Lien

Petitioners contend that respondent abused his discretion in failing to withdraw the NFTL for tax year 2005.  Under section 6323(j), the Commissioner has the discretion to withdraw an NFTL if:  (1) the filing was premature or not in accordance with administrative procedures; (2) the taxpayer enters into an installment agreement to pay the tax, unless the agreement requires that the lien remain filed; (3) the withdrawal of the lien would facilitate the collection of the tax; or (4) the withdrawal of the lien would be in the best interest of the taxpayer, as determined by the National Taxpayer Advocate, and of the United States.  See also sec. 301.6323(j)-1(a), Proced. & Admin. Regs.

**[\*10]** In <u>Hughes v. Commissioner</u>, T.C. Memo. 2011-294, this Court sustained a filed NFTL where the taxpayer alleged that the filing should have been withdrawn because it impaired his credit.  In that opinion the Court stated that the impairment of credit by itself does not impair the taxpayer's ability to satisfy his tax liability. <u>Id.</u>  Additionally, the Court noted that the taxpayer's long history of noncompliance supported the notion that the filed NFTL was necessary to protect the Government's interest in the taxpayer's property.

In a similar case, this Court again sustained a filed NFTL where the taxpayer alleged that the filing had impaired his ability to pay because he could not obtain a loan to satisfy the liability.  <u>Berkery v. Commissioner</u>, T.C. Memo. 2011-57.  The Court stated that the taxpayer had not established that the NFTL filing had impaired his ability to pay the liability because he had not presented any evidence that he had been rejected for a loan as a result of the NFTL.  The Court  noted that the taxpayer had almost two years before the filing of the NFTL, during which he made no effort to pay any of his outstanding tax liability, and that his payment history "casts doubt on the good faith of his efforts to pay."  <u>Id.</u>

The Court in both instances noted that lien withdrawal is permissive. Although section 6323(j)(1) allows the Commissioner to withdraw an NFTL for any of the reasons stated above, it does not require him to do so.  The regulations

[*11] make the Commissioner's discretion explicit: "If the Commissioner determines conditions for withdrawal are present, the Commissioner may (but is not required to) authorize the withdrawal." Sec. 301.6323(j)-1(c), Proced. & Admin. Regs.

Petitioners argue that the filing of the NFTL impaired their ability to pay the outstanding liability. Specifically, the financial impact of the NFTL left them in a position where they could no longer make the monthly installment payments or borrow funds to pay the liability in full.

Petitioners are unlike the taxpayers in Berkery and Hughes. Before 2005, petitioners had never failed to pay their Federal income tax. Even for the year at issue, petitioners correctly self-reported their income and timely filed their Federal income tax return. They did not pay their liability in full because they had expended their available funds in dealing with an ongoing family crisis. Despite being in a tight financial position, petitioners still made efforts to pay down their liability whenever possible.

During the CDP process petitioners attempted to resolve the liability by negotiating a settlement agreement. Petitioners were eager to come to an agreement and resolve the debt in an efficient way. Petitioners and SO Hoog were in agreement as to the substance of an acceptable installment agreement for tax

[*12] years 2005 and 2006. The only point of contention was whether the NFTL for 2005 should be sustained and a new NFTL for 2006 be filed in conjunction with the execution of the installment agreement.

The Court notes that petitioners were certainly financially disadvantaged by the filing of the NFTL. Additionally the Court notes that petitioners have no history of noncompliance and appear to have dealt with SO Hoog in good faith. However, it is clear that regardless of the presence of circumstances adequate to allow withdrawal of the NFTL, withdrawal is left in the discretion of the settlement officer. Accordingly, it was not an abuse of discretion for SO Hoog to refuse to withdraw the NFTL.

B. Section 6330(c)(3)

While section 6323(j) and its accompanying regulations are clear that withdrawal of a filed NFTL is left to the Commissioner's discretion, sections 6320(c) and 6330(c)(3) together direct the settlement officer to review collection alternatives under the overarching standard of "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary." Adair v. Commissioner, T.C. Memo. 2011-75.

[*13]  Petitioners contend that the filing of the NFTL was more intrusive than necessary to ensure efficient collection of the taxes owed.  Petitioners argue that the filing of the NFTL imposed serious hardship upon them by causing them to lose large lines of credit, causing the issuers of their various credit cards to decrease their spending limits and increase the interest rates on their existing accounts, seriously impairing their credit ratings and therefore their ability to procure new credit, and having an overall disastrous effect on their financial stability.

Respondent contends that withdrawing the NFTL would have impaired the Government's ability to collect the balance due by leaving it vulnerable to losing its protected interest in petitioners' assets.  Respondent further argues that SO Hoog determined that such protection was necessary until the liability was paid in full through monthly installments and that this determination was not an abuse of discretion.

The Court again notes that petitioners were doubtlessly subjected to serious financial hardship as a result of the filing of the NFTL.  However, the Court cannot say that SO Hoog's determination to sustain the NFTL was arbitrary, capricious, or without sound basis in fact or law.  Accordingly, respondent did not abuse his discretion.

**[*14]** III.  Possibility of Remand

Absent limiting statutes, courts generally have the "inherent authority to issue such orders as they deem necessary and prudent to achieve the 'orderly and expeditious disposition of cases'".  Williams v. Commissioner, 92 T.C. 920, 932 (1989) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-631 (1962)) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-765 (1980)).  In Friday v. Commissioner, 124 T.C. 220, 221-222 (2005), the Court noted that it can remand a case to an agency if the agency retains jurisdiction over the case, such as the Appeals Office does in a CDP determination.  See sec. 6330(d)(2); sec. 301.6330-1(h)(1), Proced. & Admin. Regs.

The Court may certainly remand in CDP cases when an Appeals officer has abused his discretion in some way.  See Med. Practice Solutions, LLC v. Commissioner, T.C. Memo. 2009-214.  The Court may also remand where, for example, the Appeals officer did not develop the record enough for the Court to properly review it.  See Hoyle v. Commissioner, 131 T.C. 197, 204-205 (2008).

Remand may be a response to an error the Court has found that it wants the Appeals Office to remedy.  However, the Court has also remanded where the law changed between the CDP hearing and the Tax Court trial if that may have affected a taxpayer's presentation of his case.  See Harrell v. Commissioner, T.C.

**[*15]** Memo. 2003-271. The Court has also suggested that it may remand when the Appeals Office did not abuse its discretion and there was no change in law, so long as the remand would be "helpful". Wells v. Commissioner, T.C. Memo. 2003-234 n.6, aff'd, 108 Fed. Appx. 440 (9th Cir. 2004); see also Ashlock v. Commissioner, T.C. Memo. 2008-58 (noting taxpayer declined remand to consider changed financial circumstances). Phrased differently, the Court "return[s] a case to Appeals if * * * [it] consider[s] a rehearing 'necessary or productive'". Martin v. Commissioner, T.C. Memo. 2003-288 (quoting Lunsford v. Commissioner, 117 T.C. 183, 189 (2001)), aff'd, 436 F.3d 1216 (10th Cir. 2006).

In Churchill v. Commissioner, T.C. Memo. 2011-182, the Court used the preceding analysis to reach the holding that it has authority to remand a CDP case for consideration of changed circumstances when remand would be helpful, necessary, or productive. In Churchill the taxpayer was married at the time of the CDP hearing, and his joint income with his spouse was considered in rejecting an offer-in-compromise. By the time of trial, the taxpayer and his spouse were divorced. The Court chose to remand the case because this change in circumstances could affect the outcome of the Commissioner's offer-in-compromise analysis.

[*16] Since petitioners' CDP hearing, Mr. Kehoe has become eligible to make withdrawals from his IRA without the threat of penalty. While this change of circumstances certainly has an effect on petitioners' liquidity, it does not reflect a change that would have potentially affected respondent's decision to proceed with the filing of the NFTL. Consequently, the facts presented do not show a material change in circumstances such that remand would be appropriate.[7]

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.

---

[7]The Court notes that while remand is not appropriate in this instance, petitioners may still pursue collection alternatives with the IRS. Sec. 6330(b)(2) would preclude petitioners' seeking judicial review of any subsequent administrative determination; however, petitioners are still free to attempt to negotiate a new collection alternative on the basis of changed circumstances.